## HUIE v. McDANIEL et al.

1. The cardinal rule of construction of deeds, as well as other contracts, is to ascertain the intention of the parties. If that intention be clear from the deed and circumstances of the transaction and contravenes no rule of law, it should be enforced, notwithstanding there might be mere literal repugnancies in different clauses of the conveyance. It follows from the above, that where a father in the granting clause of a deed conveys to his daughter, " her heirs and assigns," a certain tract of land, and afterwards in the habendum clause the conveyance is enlarged by words to have and to hold said land and its appurtenances unto the daughter and her two children, naming them, " made equal as heirs," the real intention of the parties to the conveyance is to pass an estate in common to the daughter and the other two named persons. An action of ejectment for the recovery of a portion of the land embraced in the deed in favor of these three owners as plaintiffs can be maintained.

2. This court can not consider any ground in the motion for a new trial, complaining of errors in the court below in admitting or rejecting testimony, when the motion fails to set forth what was the particular testimony thus admitted or rejected.

3. There was sufficient evidence to sustain the verdict.

Argued June 21,—Decided July 26, 1898.

Ejectment. Before Judge Harris. Carroll superior court. April term, 1897.

*William Capers Hodnett,* for plaintiff in error.

*W. F. Brown, C. P. Gordon, S. Holderness* and *Adamson & Jackson,* contra.

Lewis, J. Ejectment was brought against Huie for a certain part of lot No. 142 in the 9th district of Carroll county. Two demises were laid, one in Mrs. M. E. McDaniel, and the other in Mrs. M. E. and Annie and Mattie McDaniel. J. B. McDaniel, the common grantor of the parties, and who formerly owned the whole of lot 142, made a deed in November, 1874, conveying the south half of the lot to himself as guardian for certain minors named Cock, and subsequently, under an order

of court, conveyed it as guardian of these minors to Samuel A. Brown, who in 1883 executed a deed reciting that in consideration "of the natural affection of a father to his child, I, S. A. Brown of the county of Heard, do hereby give and bequeath to daughter, M. E. McDaniel of the county of Carroll, her heirs and assigns, a tract or parcel of land" (describing it). "To have and to hold said land and its appurtenances unto said M. E. McDaniel, M. H. McDaniel, A. E. McDaniel, made equal as heirs, her heirs, executors, administrators and assigns, in fee simple." Then follows, "I warrant the title to said land against the lawful claims of all persons." M. H. and A. E. McDaniel are daughters of M. E. McDaniel. On May 15, 1875, J. B. McDaniel conveyed to the defendant a tract described in the deed as "fifty acres square in the northwest corner of" lot 142. The plaintiffs contended that Huie was in possession of a part of their land in the south half of lot 142. Defendant contended that the land in question was not a part of the south half, but was north of a line established by J. B. McDaniel in 1872 as the boundary-line between the north half and the south half of the lot, and that he (Huie) was in possession of the strip of land in dispute before the deed to the south half was made by McDaniel to himself as guardian, and had ever since remained in possession and had a good prescriptive title to it. The jury rendered a verdict in favor of the plaintiffs for the premises in dispute, and $140 "for damage and rents." The defendant's motion for a new trial was overruled, and he excepted.

1. One of the grounds in the motion for a new trial is, "Because the court erred in holding, when the question was raised and passed upon, that the deed from Samuel A. Brown to Mrs. M. E. McDaniel conveyed such title to all of the plaintiffs as would authorize them to recover in this case." We do not think there is any serious difficulty in arriving at the real intention of the grantor Brown from the words above quoted from his deed. The granting clause of the deed conveys a fee-simple estate to his daughter, Mrs. M. E. McDaniel; and the habendum clause manifestly intended to include in the conveyance her daughters, M. H. and A. E. McDaniel. The expression, "made equal as

heirs," can have but one reasonable construction, and that is, that the three persons named in the habendum clause shall each have an equal interest in the premises conveyed as tenants in common. The grantor perhaps thought the words "her heirs," in the granting clause of the deed, were sufficient to convey title also to the grantee's children. This of course was not true. But he had a right to designate in the deed what he meant by "her heirs"; and this he did, in the habendum clause, by specifying the names of his grandchildren, "made equal as heirs." The question arises, shall the real intention of the grantor, as manifested by his writing, be respected by the courts, or shall it be ignored in a literal and rigid enforcement of the ancient rule, that of two repugnant clauses in a deed the latter must yield to the former? We can see no sound reason why any different rule of interpretation of words in a deed should prevail from what would ordinarily govern in cases of other contracts. Were this an ordinary contract, the entire instrument would be so construed together as to make all its parts stand, if possible, and to carry out the real intention of the contracting parties, and reconcile all apparent differences and conflicts in the language used. Section 3673 of the Civil Code declares: "The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction." This cardinal rule of construction has several times by this court been applied to deeds in cases where repugnant clauses existed in them. In *Thurmond* v. *Thurmond*, 88 *Ga.* 182, a deed, in its granting, habendum, and warranty clauses, by its terms conveyed the absolute fee-simple title to land to certain grantees named. Following the warranty clause was a provision in the deed that at the death of one of the grantees, his interest in the land should go to certain other parties named. It was held in that case, in effect, that the intention of the grantor being to limit the estate taken by one of the grantees named in the first part of the deed, such intention should be carried into effect, notwithstanding a mere literal repugnancy in the several clauses of the conveyance. See also *Henderson* v. *Sawyer*, 99

*Ga.* 234, and cases there cited. These rulings seem based upon the idea that the section of the code cited modifies the old rule upon the subject of repugnant clauses in a deed. The trend of modern authorities seems to be in the same direction. The rigid rule of construction that once prevailed in regard to such instruments is fast giving place to a more liberal one, which does not hunt up technicalities of the law that oft result in defeating the real and manifest wishes of contracting parties. Where truth was at one time so walled in by a rigid adherence to old doctrines that the light was admitted only here and there through cracks and crevices of these ancient walls, the tendency now is, and should be, to throw open wider the doors and admit the full sunlight, with the view of finding and enforcing this cardinal rule of intention. In Bodine's administrators *v.* Arthur, 91 Ky. 53, 34 Am. St. Rep. 162, it was ruled that where a deed in the granting clause conveyed land to a certain party named, and in the habendum clause it included not only the grantee named, but also the grantee's children, it should be construed as meaning that the grantor intended the habendum to operate as an addendum or proviso to the granting clause.

2. There were several grounds in the motion for a new trial, complaining of errors of the court in admitting and rejecting testimony; but these grounds can not be considered, for the reason that the motion fails to set forth the particular testimony thus admitted or rejected, and hence it is impossible for us to pass upon its materiality or relevancy. For instance, objection is made to a witness testifying upon a certain subject. Upon examination of his evidence in the record we find that much, if not all, of his testimony upon this particular matter was relevant and proper; and our attention not being called to any special portion of it in the motion, we can not say that the court erred in admitting any part thereof. Again, objection is made to the rejection of the bond for titles from the common grantor to the defendant, without setting forth the terms of the bond, or giving a description of the particular premises it was intended to cover. We are therefore left in the dark whether the bond, if it had been admitted in evidence, would have thrown any light on the case.

3. It is insisted by counsel for plaintiff in error, that the verdict is contrary to the evidence, in that the testimony showed a perfect prescriptive title in the defendant, namely, seven years' possession under color of title. This contest arose over a disputed line between coterminous landowners. The narrow strip in the shape of a trapezoid which was in dispute was originally covered with a dense growth of trees, and seems to have remained so until two or three years perhaps before the bringing of this suit. The jury might fairly have inferred that the possession of the defendant of this disputed strip did not become openly adverse until he commenced clearing the land for the purpose of cultivation within a year or two before this action was filed. There is at least sufficient evidence in the case to hold that there was no abuse of discretion by the trial judge in approving the verdict and refusing a new trial.

*Judgment affirmed. All the Justices concurring.*