TURK *et al. v.* JEFFREYS-MCELRATH MANUFACTURING CO.

CANDLER, Justice. Jeffreys-McElrath Manufacturing Company brought a suit for damages and injunctive relief against Thomas J. Turk, Samuel F. Turk, and Felton Lester. As amended, its' petition alleged: Mrs. Joseph G. Blount and several others, on August 22, 1941, for $10,000 and other considerations, jointly conveyed to the petitioner all of the merchantable saw timber on 8163.4 acres of land in Jones County, locally known as the "Blount lands"; and "merchantable saw timber" was defined thereby to mean and be all trees standing, growing, lying, and being on the land described therein measuring ten inches, and over, across the stump twelve inches from the ground at the time of cutting, except the ash timber which was to be eight inches, and over, in diameter. The timber conveyed was located on sixteen separately described tracts, ranging in acreage from 140.7 acres to 1844 acres, some of which were not contiguous to the other tracts. The deed contained this recital: "The said party of the second part, its successors and assigns, shall have the same for the term of ten years from this date, and shall have that length' of time in which to cut, saw, and remove the said timber from the land and to exercise all of the privileges herein

mentioned, without charge additional therefor; it being understood, however, that, as the cutting and removing of timber and lumber from the premises above described progresses, the land from which the timber and lumber is cut and removed shall be released to the parties of the first part. It is understood that party of the second part is to use its own discretion as to what property is to be released under this paragraph, and second party shall have the right of ingress and egress over any property which may be released during the term of this lease for the purposes thereof, and shall further have the right to maintain any saw mill which it may have erected on any of the land herein described during the continuance of this lease." It was also alleged that the petitioner cut and removed some of its timber from areas on the Mary Jo Chambers tract during the latter part of 1941 and the first part of 1942. The petitioner's grantors, after conveying the timber to it, but expressly subject to that sale, conveyed 140.7 acres of the Blount lands, being that part known as the "Mary Jo Chambers tract," to the defendants Thomas J. Turk and Samuel F. Turk. In 1947 the defendants wilfully cut and removed 53,629 feet of the timber which had previously been conveyed to the petitioner from areas on the Chambers tract over which the petitioner had not cut any of its timber, which, after being manufactured into rough lumber, was worth $2413.30. The petition also alleged that the defendants were then cutting and removing the timber from said tract, that they had been requested not to do so, and that they had stated to the petitioner's agent that it was their intention to continue cutting, as the timber belonged to them. There was an allegation that the defendants were insolvent, and a copy of the petitioner's timber deed was attached to and made a part of the petition. The prayers were: for process; a judgment for $2413.30—the manufactured value of the timber wilfully cut and removed; for a temporary and permanent injunction to prevent a continuing trespass; and for general relief. There was no demurrer to the petition. By a joint answer it was admitted that the defendants, Thomas J. Turk and Samuel F. Turk, purchased a part of the Blount lands, namely, the Chambers tract, after their grantors had conveyed the merchantable saw timber on it to the petitioner, and that they acquired it subject to all of the outstanding rights and title of the petitioner; but it was denied that the petitioner's timber deed had the meaning and effect which the petitioner ascribed to it. They denied the allegation of insolvency; admitted that they were, when the suit was instituted, engaged in cutting and removing timber from the Chambers tract; and alleged that it was their intention to continue doing so, as the timber being cut and removed belonged to the defendants, Thomas J. Turk and Samuel F. Turk. The defendants also took the position and contended that the release clause in the petitioner's deed was either ambiguous—and consequently evidence was admissible for the purpose of showing the intention of the makers—or else it clearly meant that the petitioner was required thereby to cut and remove, by continuous operation, all of its timber from each of the sixteen separate tracts referred to in its deed and then release the same, and accordingly could not cut and remove some of its timber from any one of the

separate tracts, abandon its operations, and later return to the same tract for the purpose of cutting other timber.

The trial judge held: that the petitioner's deed was not ambiguous; that it conveyed to the petitioner all of the merchantable saw timber, as defined therein, on a boundary of land containing 8163.4 acres; that the separate tracts were mentioned in the petitioner's deed for description only, and not for the purpose of prescribing a method of operation; that the petitioner had a right under its deed to select and cut its timber from any area on the entire boundary during the period allowed for operations; that the petitioner had a right to cut and remove from any area it selected from the boundary as a whole any one variety of its timber and return to the same area later for the purpose of cutting another variety, but not for the purpose of recutting the same variety; and that, when all of the petitioner's timber was cut and removed from any area selected by it, the land from which it was cut and removed stood released to the owner, subject only to the petitioner's rights of ingress, egress, and mill-site privileges. And on the trial the defendants were not permitted to introduce evidence for the purpose of showing that the makers of the deed intended for it to have a different meaning. A jury, after hearing evidence, found that the defendants had cut and removed timber belonging to the petitioner and from areas on the Chambers tract over which the petitioner had not previously cut and removed its timber, and awarded $397.78 as damages for the injury; and that a permanent injunction should be granted as prayed for. The defendants filed a motion for new trial, which, after being amended, was overruled and the exception is to that judgment. *Held:*

1. The trial judge did not err, as contended, in holding that the deed here involved was unambiguous. Many definitions of the term "ambiguous" can be found in the reports, in law dictionaries, and in various standard lexicons, and while these definitions vary among themselves, some being broader, and some more restricted in scope, yet when tested by any of them the instrument immediately under consideration, is, it seems to us, not open to the criticism made upon it by counsel for the plaintiffs in error, that it is ambiguous. "Ambiguity" signifies "of doubtful or uncertain nature; wanting clearness or definiteness; difficult to comprehend or distinguish; of doubtful purport; open to various interpretations." Century Dictionary; 3 Words & Phrases (Perm. ed.) 312: *McCann* v. *Glynn Lumber Co.*, 199 *Ga.* 669, 679 (34 S. E. 2d, 839). In the *McCann* case it was said: "A contract may be so clear as not to require interpretation, but a mere lack of clarity on casual reading is not the criterion for determining whether a contract is afflicted with ambiguity within the rule as to the admission of parol evidence to explain its meaning. Nor is a contract ambiguous within that sense merely because it may be even difficult to construe. The construction of a contract, if needed, being a question of law for the court, as well as a duty that rests upon the court, there can be no ambiguity within the rule to which we have referred, unless and until an application of the pertinent rules of interpretation leaves it really uncertain which of two or more possible meanings represents the true intention of the parties."

2. The construction of an unambiguous deed, like the construction of any other contract, is a question for determination by the court. Code, § 20-701. Its meaning and effect is a question of law to be settled by the judge and, since such an instrument necessarily speaks for itself, parol evidence is inadmissible to add to, take from, or vary its terms in any way. Code, § 20-704 (1); *Heatley* v. *Long,* 135 *Ga.* 153 (2) (68 S. E. 783).

3. A deed which conveys an absolute estate in timber, with an unrestricted right to cut and remove it during a given period of time, and which prescribes and fixes no requirements for operation except "as the cutting and removing of timber and lumber from the premises . . progresses, the land from which the timber and lumber is cut and removed shall be released . . ," should not be construed as one requiring the grantee to "clean-cut" by continuous operation an area of the land upon which it has entered for the purpose of cutting and removing its timber. *Napier* v. *Decatur County Lumber Co.,* 150 *Ga.* 687 (104 S. E. 625). Compare *Bozarth* v. *Paschall,* 158 *Ga.* 208 (122 S. E. 683).

4. A fair and reasonable construction was given by the trial judge to the deed here involved, the jury was fully and correctly instructed as to its meaning and effect, and the verdict is amply supported by evidence. Consequently no error appears.

*Judgment affirmed. All the Justices concur. Atkinson, P.J., concurs in the judgment only.*

No. 17111. JUNE 15, 1950.

*John R. L. Smith,* for plaintiffs in error.

*Jackson & Jackson, Carlton Mobley,* and *Jones, Jones & Sparks,* contra.