S07A1170. SECOND REFUGE CHURCH OF OUR LORD JESUS CHRIST, INC. v. LOLLAR et al.

(653 SE2d 462)

SEARS, Chief Justice.

This appeal involves a dispute over the ownership of church property in Fulton County. In 2003 the plaintiff, a nonprofit religious corporation, filed a complaint to quiet title to improved real property that had served as the congregation's temporal home since the mid-1960's. The need for the lawsuit arose out of the estrangement of the congregation from its founding pastor and his decision in 1998 to broker a deal to sell the property to a congregation in Cobb County. A special master was appointed who ultimately recommended that the trial court cancel a 1990 quitclaim deed to the property as a forgery and hold that the Cobb County congregation held title to the property in fee simple absolute by virtue of the 1998 warranty deed procured by the estranged founding pastor. Following a hearing, the trial court adopted the special master's report and recommendations, and the religious corporation appealed. The record amply supports the concurrent finding of the special master and the trial court that the 1990 quitclaim deed is a forgery. However, the special master and the trial court erred in concluding that the 1998 warranty deed conveyed fee simple absolute title to the Cobb County congregation. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

1. In 1962, Rev. Alphaeus Eddie Days began conducting religious services in his home in Fulton County. By 1965, the worshipers had coalesced into a religious body calling itself the "Second Refuge Church of Our Lord Jesus Christ" with Rev. Days as its pastor. On February 15, 1965, Rev. Days purchased an existing church building and the surrounding real property located at 60 Johnson Road for the congregation's use. The 1965 warranty deeds from the prior owners conveyed the property to Rev. Days "as Trustee of Second Refuge Church of Our Lord Jesus Christ."

Ten years later, the congregation reorganized as a Georgia nonprofit religious corporation. The initial directors of the corporation were Rev. Days, his assistant pastor Rev. Johnny P. Clowers, and an attorney. The initial directors approved the articles of incorporation and by-laws which, among other things, provided that the statutorily required annual meeting would occur each year in April,

set the terms of office for directors of the corporation at one year, and stated that on the death, removal, or resignation of a director, the majority of the remaining directors would appoint his or her successor to the board. The by-laws specified that a conveyance of church property would be valid "only if signed by the corporation acting through an Officer following authorization by the Board of Directors." The board elected Rev. Days as president of the corporation and Rev. Clowers as secretary and treasurer. A week later, Rev. Days announced to the assembled congregation that he was stepping down as pastor and calling Rev. Clowers to lead the church but said that he "would be back" at some unspecified point in the future. Rev. Days and his family continued attending services at the property for many years following this announcement.

In April 1976, the directors signed a joint consent and adopted meeting minutes in lieu of the annual meeting as permitted by statute. According to the minutes, the board accepted Rev. Days's resignation as pastor, president, and director effective as of the date of his announcement to the congregation that he was handing over the day-to-day operations of the congregation to Rev. Clowers. The board also accepted the resignation from the board of the initial director who was an attorney. Rev. Clowers and two others were elected as directors for the coming year, and Rev. Clowers was selected to be the new president of the corporation.

In the late 1980's, Rev. Clowers and Rev. Days began having disagreements about how the congregation should be run, and their relationship turned acrimonious. Rev. Days ceased attending services on a regular basis, although he continued to support the church financially, and members of his family attended worship services and other functions. In early 1990, soon after the security deed financing the original purchase of the property had been satisfied, the board of directors published a series of notices in the newspaper informing the public that Rev. Days was no longer a trustee or director of the church and was not authorized to conduct business on the congregation's behalf. On April 27, 1990, the board recorded a claim of prescriptive ownership to the property in the Fulton County Superior Court Clerk's Office.

Around the same time, a quitclaim deed pertaining to the property was recorded in the Fulton County Superior Court Clerk's Office. The 1990 quitclaim deed purported to convey the property from Rev. Days in his capacity as trustee of the congregation prior to its incorporation to four relatives and other individuals closely associated with Rev. Days "as Trustees of Second Refuge Church of Our Lord Jesus Christ, Inc." Eight years later, in 1998, Rev. Days brokered a deal to sell the church property to Trinity World Church ("Trinity") in Cobb County for $30,000. On March 23, 1998, a warranty deed was

recorded in the Fulton County Superior Court Clerk's Office that purported to convey the property from the four grantees named in the 1990 quitclaim deed to the trustees of Trinity. The Trinity trustees executed a $15,000 security deed in favor of the 1990 grantees, satisfied several tax liens against the property, and paid the remainder of the $30,000 purchase price directly to Rev. Days.

Shortly thereafter, the congregation obtained a temporary restraining order to prevent Rev. Days and his family from continuing to disrupt Sunday morning services at the property. When Trinity learned of the congregation's claim that it owned the property rather than Rev. Days, it attempted to back out of the deal, and Rev. Days refunded some of the funds Trinity had paid him. The congregation attempted to resolve the matter through negotiations with Trinity's trustees and agreed to reimburse Trinity for any legitimate bills of the congregation that Trinity had paid. The negotiations failed to produce a solution in 1998 and again in 2003, and on September 11, 2003, the congregation filed suit to quiet title to the property against all the world in the Fulton County Superior Court.

In its complaint, the congregation alleged that it owned the property both as holder of record title and by prescription. The congregation attached to the complaint all recorded documents pertaining to title to the property, including the 1990 quitclaim deed of unknown provenance. Trinity answered and counterclaimed for title to the property, and Rev. Days intervened and sought title to the property as well. The congregation filed a motion for summary judgment asserting that the 1990 quitclaim deed was a forgery and that the 1998 warranty deed to Trinity's trustees based on it was therefore invalid. The congregation asked the trial court to cancel both deeds and declare that fee simple absolute title to the party rested in the congregation. Trinity and Rev. Days opposed the motion, disputing the congregation's claim that the 1990 quitclaim deed was a forgery. The trial court concluded that there was a disputed issue of material fact and denied the congregation's motion for summary judgment.

The trial court appointed a special master to investigate and prepare a report with findings of fact and conclusions of law. At the hearing before the special master, Rev. Days and Trinity reversed course, claiming that the 1990 quitclaim deed ostensibly signed by Rev. Days was indeed a forgery. However, they argued that it was the congregation's title, not Trinity's, that depended on the 1990 quitclaim deed. Following a hearing greatly hindered by the lack of preparation and incivility of counsel for both sides, the special master issued her report.

The special master found that the reference in the 1965 warranty deeds to Rev. Days "as Trustee of Second Refuge Church of Our Lord

Jesus Christ" was simply an honorary designation having no effect on title to the property. She therefore concluded that the 1965 warranty deeds conveyed the property to Rev. Days in fee simple absolute. As for the 1990 quitclaim deed, the special master found that it was a forgery, as the congregation had claimed all along and as Rev. Days and Trinity had belatedly conceded at the hearing. The special master did not explicitly address the congregation's argument that since the 1990 quitclaim deed was a forgery, the 1998 warranty deed based on it was also invalid. Instead, she concluded, without analysis, that the 1998 warranty deed vested fee simple absolute title to the property in Trinity's trustees.

On November 20, 2006, the trial court adopted the special master's report and entered judgment in favor of Trinity's trustees. The congregation appealed.

## Rev. Days's Claim to Title

2. The analysis begins with the 1965 warranty deeds. The deeds conveyed the property from the prior owners to Rev. Days "as Trustee of Second Refuge Church of Our Lord Jesus Christ." The special master acknowledged that the 1965 warranty deeds conveyed title to Rev. Days as a trustee but found as a matter of fact that Rev. Days used the word "Trustee" merely as an honorary title. Based on this finding, the special master concluded that the 1965 warranty deeds did not create a religious land trust in favor of the congregation but instead passed title to Rev. Days in fee simple absolute. The congregation argues that the trial court's legal conclusion does not follow from this factual finding. We agree.

Concurrent findings by a trial court and special master are entitled to great deference on appeal. Findings of fact will not be reversed unless they are clearly erroneous, and as long as there is any evidence in the record to support a particular finding, it will not be disturbed.[1] By contrast, conclusions of law by a trial court and special master are subject to de novo review on appeal.[2]

The construction of a deed presents a question of law which this Court reviews de novo.[3] In construing a deed, the court's overriding

---

[1] *Cernonok v. Kane*, 280 Ga. 272, 273 (627 SE2d 14) (2006); *Seignious v. Metro. Atlanta Rapid Transit Auth.*, 252 Ga. 69, 71 (311 SE2d 808) (1984).

[2] *Hunter v. State*, 281 Ga. 526, 528 (640 SE2d 271) (2007); *Knott v. Knott*, 277 Ga. 380, 381 (589 SE2d 99) (2003).

[3] *Imerys Marble Co. v. J.M. Huber Corp.*, 276 Ga. 401, 403 (577 SE2d 555) (2003); *Allgood Farm, LLC v. Johnson*, 275 Ga. 297, 300 (565 SE2d 471) (2002).

goal is to ascertain and give effect to the intent of the parties.[4] Generally speaking, the intent of the parties must be determined from the deed's text alone, and extrinsic evidence will be admitted to interpret the deed only where the deed's text is so ambiguous that its meaning cannot be determined through application of the ordinary rules of textual construction.[5] Absent such ambiguity, there is no question of fact to be resolved by the factfinder.[6]

The 1965 warranty deeds are plain on their face. They conveyed the church property to Rev. Days "as Trustee of Second Refuge Church of Our Lord Jesus Christ." Georgia law expressly authorizes the creation of religious land trusts,[7] and the language employed in the 1965 warranty deeds is the typical formulation employed to do so.[8] The trial court's finding that Rev. Days used the phrase "as Trustee of Second Refuge Church of Our Lord Jesus Christ" as a mere moniker does not alter the legal analysis. Where the language of a written instrument is clear and unambiguous, the courts must enforce it as written rather than giving effect to the subjective and unexpressed intentions and understandings of one party.[9] Thus, the trial court and special master erred in holding that fee simple absolute title to the church property vested in Rev. Days as a result of the 1965 warranty deeds.

Even if the deeds were ambiguous and extrinsic evidence could be considered, the special master's conclusion that title to the property vested in Rev. Days in fee simple absolute would still be erroneous as a matter of law. The property in question had an existing church building on it. A pastor made the down payment and executed a security deed in favor of the grantors "as Trustee of the Second Refuge Church of Our Lord Jesus Christ." The congregation, not Rev. Days, paid off the security deed. Moreover, Rev. Days testified repeatedly at

---

[4] *Dept. of Transp. v. Meadow Trace, Inc.*, 280 Ga. 720, 721 (631 SE2d 359) (2006); *Huie v. McDaniel*, 105 Ga. 319, 319 (31 SE 189) (1898).

[5] *Turk v. Jeffreys-McElrath Mfg. Co.*, 207 Ga. 73, 75 (60 SE2d 166) (1950); *Hale v. Scarborough*, 279 Ga. App. 614, 616 (631 SE2d 812) (2006).

[6] *Imerys Marble Co.*, supra, 276 Ga. at 403; *Hardman v. Dahlonega-Lumpkin County Chamber of Commerce*, 238 Ga. 551, 553 (233 SE2d 753) (1977).

[7] OCGA § 14-5-46.

[8] See, e.g., *Carnes v. Smith*, 236 Ga. 30, 30 (222 SE2d 322) (1976); *Apostolic Overcoming Holy Church of God, Inc. v. Davis*, 228 Ga. 36, 37 (183 SE2d 745) (1971); *Presbyterian Church in the United States v. E. Heights Presbyterian Church*, 225 Ga. 259, 260-261 (167 SE2d 658) (1969). Compare 2 Daniel F. Hinkel, *Pindar's Georgia Real Estate Law and Procedure* § 19-39, at 340 (6th ed.) (advising that "[w]here title is to be divested from a trustee, executor, administrator, receiver, guardian, or other fiduciary, he should sign in his representative capacity; that is, 'as trustee aforesaid,' or 'as executor aforesaid,' etc.") (hereinafter "Pindar").

[9] *Read v. Gould*, 139 Ga. 499, 506 (77 SE 642) (1913); *Eastside Gardens of Snellville, LLC v. Sims*, 248 Ga. App. 797, 799 (547 SE2d 383) (2001). See also *Sutton v. First Nat. Bank of Crossville*, 620 SW2d 526, 530 (Tenn. Ct. App. 1981).

the hearing before the special master that he bought the property for the congregation and that the congregation was the owner of the property from the very beginning. Accordingly, both the text of the 1965 warranty deeds and the extrinsic evidence in the record point unequivocally in only one direction: the 1965 warranty deeds created a religious land trust in favor of the congregation with Rev. Days as the trustee.[10]

As a result of the 1965 warranty deeds, Rev. Days secured legal title to the church property, but beneficial or equitable title passed to the congregation.[11] When the congregation later reorganized as a nonprofit religious corporation, equitable title to the church property passed to the corporation as the unincorporated body's legally constituted successor-in-interest.[12] Rev. Days had no power to convey title to the church property to anyone without a majority vote of the unincorporated congregation and, later, without authorization by the corporation's board of directors.[13] There is no evidence in the record that such a vote was ever taken.

## *Trinity's Claim to Title*

3. The special master found that the signature of Rev. Days on the 1990 quitclaim deed was a forgery, a finding amply supported by the record on appeal. The special master then concluded, with no explanation, that the 1998 warranty deed from the grantees named in the 1990 quitclaim deed vested fee simple absolute title to the church property in Trinity's trustees. On appeal, the congregation contends that the special master's conclusion, which was adopted by the trial court, cannot be sustained as a matter of law. We agree.

The 1990 quitclaim deed was a forgery. It was a complete nullity and was ineffective to convey title to the church property from Rev.

---

[10] In essence, Rev. Days claims that in light of his role as the founder and initial pastor of the congregation and his many other contributions over the years, both financially and otherwise, he is still the one rightful leader of the church. In other words, what Rev. Days seeks is control, not of the church property, but of the congregation itself. We pass no judgment on the merits of Rev. Days's claim in this regard. In this country, ecclesiastical disputes of this nature are beyond the purview of the civil courts. *Serbian E. Orthodox Diocese for the United States & Canada v. Milivojevich*, 426 U. S. 696, 709 (96 SC 2372, 49 LE2d 151) (1976); *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Mem. Presbyterian Church*, 393 U. S. 440, 449 (89 SC 601, 21 LE2d 658) (1969).

[11] *Henderson v. Collins*, 245 Ga. 776, 780 (267 SE2d 202) (1980); *Mason v. Young*, 203 Ga. 121, 122 (45 SE2d 643) (1947).

[12] *Huger v. Protestant Episcopal Church in Diocese of Ga.*, 137 Ga. 205, 206 (73 SE 385) (1911); *Beckwith v. Rector, Wardens & Vestrymen of St. Philip's Parish*, 69 Ga. 564, 564 (1882).

[13] OCGA § 14-5-47; *Myrick v. Holmes*, 151 Ga. 437, 437-438 (107 SE 324) (1921); 1 Pindar, supra, § 1-30, at 47.

Days to the named grantees.[14] Thus, the grantees had no title to convey to the Trinity trustees when they executed the 1998 warranty deed. As a leading authority on Georgia property law has explained, "[i]t is elementary that land not owned by the grantor cannot pass by his deed."[15] Accordingly, the special master and the trial court erred in ruling that fee simple absolute title to the property vested in the Trinity trustees by virtue of the 1998 warranty deed.

On appeal, the Trinity trustees do not seek to defend the special master's report and the resulting trial court judgment on their own terms. In other words, the Trinity trustees no longer contend that they can trace their claim to the church property from the 1998 warranty deed back through the 1990 quitclaim deed to the 1965 warranty deeds. Instead, they seek to defend the trial court's judgment on the ground that the 1998 transaction was a bona fide purchase for value without notice of the defect in the grantees' title. This argument fails for several reasons.

First, the congregation was in actual possession of the property when the transaction occurred, and actual possession of land constitutes notice of the possessor's interest in the property as a matter of law.[16] Second, the recorded chain of title provided notice to the Trinity trustees of the congregation's claim to the property by virtue of the congregation's recorded notice of prescriptive claim.[17] Third, the forged 1990 quitclaim deed bars the Trinity trustees from claiming the protection of the bona fide purchaser for value doctrine.[18]

## Conclusion

4. In sum, as a result of the 1965 warranty deeds, Rev. Days held legal title to the church property in trust for the benefit of the congregation. The record before us does not show that Rev. Days ever validly transferred legal title to the property to anyone. The 1990 quitclaim deed was a forgery, and the 1998 warranty deed was, therefore, insufficient to convey legal or equitable title to the property

---

[14] *Rock Run Iron Co. v. Miller*, 156 Ga. 136, 141 (118 SE 670) (1923); *Cole v. Levi*, 44 Ga. 579, 582 (1872).

[15] 2 Pindar, supra, § 19-20, at 329.

[16] *Bacote v. Wyckoff*, 251 Ga. 862, 865 (310 SE2d 520) (1984); *Finch v. Beal*, 68 Ga. 594, 597 (1882). See also OCGA § 44-5-169.

[17] *VATACS Group v. HomeSide Lending*, 276 Ga. App. 386, 391 (623 SE2d 534) (2005), aff'd, 281 Ga. 50 (635 SE2d 758) (2006); *Va. Highland Civic Assn. v. Paces Props.*, 250 Ga. App. 72, 74 (550 SE2d 128) (2001).

[18] *Tate v. Potter*, 216 Ga. 750, 752 (119 SE2d 547) (1961); *Chestnut v. Weekes*, 183 Ga. 367, 371 (188 SE 714) (1936). See also *Mabra v. Deutsche Bank & Trust Co. Ams.*, 277 Ga. App. 764, 767-768 (627 SE2d 849) (2005) ("forgery is one of the few defenses that can defeat the claim of a purchaser for value").

to the Trinity trustees. Moreover, the 1998 sale was not a bona fide purchase for value without notice. Thus, Rev. Days still holds legal title to the church property, but Second Refuge Church of Our Lord Jesus Christ, Inc. has equitable title. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

*Judgment affirmed in part, reversed in part, and case remanded. All the Justices concur.*

DECIDED NOVEMBER 21, 2007.

*Charles E. Phillips, Sr., Charles M. Cork III*, for appellant.
*Arthurlyn Combs-Hixson*, for appellees.