S10G1343. BROWN et al. v. POUNDS et al.
S10G1345. McGINNIS et al. v. POUNDS et al.

(711 SE2d 646)

HUNSTEIN, Chief Justice.

We granted certiorari to determine whether the Court of Appeals erred when it concluded that an amendment to the bylaws of Cobb Electric Membership Corporation ("Cobb EMC") violated a settlement agreement previously entered into by the parties to this action. See *Pounds v. Brown*, 303 Ga. App. 674 (695 SE2d 66) (2010). Although the Court of Appeals did err in certain aspects of its analysis, it reached the correct result and we thus affirm in part pursuant to the right for any reason rule. See *MCG Health v. Owners Ins. Co.*, 288 Ga. 782 (2) (b) (707 SE2d 349) (2011). The relevant underlying facts are as follows.

In October 2007, Edgar Pounds and other Cobb EMC members ("Members") filed a derivative action against the company and certain of its officers and directors, including Dwight Brown and David McGinnis. The parties entered into a settlement agreement ("Agreement") in October 2008, which stipulated that the Members

> will seek an amendment to the by-laws at the next meeting of Cobb EMC members. . . . Such amendment will seek to allow members the right to vote for directors by mail-in ballots subject to the development and implementation of appropriate security measures.

On December 3, 2008, the trial court issued an order approving the Agreement, see OCGA § 46-3-272 (c) (derivative action by member of EMC shall not be settled without court approval), and requiring the parties' full cooperation in its implementation.

At a meeting of Cobb EMC's board of directors ("Board") on December 12, 2008, the Board unanimously voted to amend the EMC's bylaws to allow, inter alia, proxy voting[1] at member meetings when the election of directors is *not* on the agenda; this new voting procedure would apply to the upcoming meeting to be held pursuant to the Agreement. In response to this action, the Members filed an emergency motion to enforce the trial court's December 3 order, seeking injunctive relief and the appointment of a special master. In an order entered on January 22, 2009 after a hearing, the special master appointed by the trial court agreed with the Members that Georgia law, Cobb EMC's bylaws, the Agreement and the trial

---

[1] Although voting by mail-in ballot and voting by proxy are not identical concepts, any differences are not relevant to the issues on appeal here.

court's order approving the Agreement had been violated by the Board's actions in amending the bylaws on December 12. The defendants appealed to the trial court and, in an order entered on May 14, 2009 after a hearing, the trial court found that the Board's proxy voting bylaw amendment was consistent with both Georgia law and the EMC's bylaws and would promote member inclusion in the governing process.

The Members appealed to the Court of Appeals, which reversed in part and remanded, holding that the Board's proxy voting bylaw amendment is contrary to the terms of the Agreement because the use of proxies is inconsistent with the requirement that the EMC members be provided an opportunity to vote on the use of mail-in ballots for director elections "at" the next member meeting. *Pounds*, supra, 303 Ga. App. at 676-677 (1) (a). It also held that failing to provide the Members with notice of the Board's intent to vote on an amendment to the EMC's bylaws is inconsistent with the trial court's order requiring the parties' full cooperation in implementing the terms of the Agreement. Id. at 677 (1) (a). Petitions for certiorari filed by Cobb EMC, see Case No. S10G1343, and Board members McGinnis and Frank Boone,[2] see Case No. S10G1345, were granted and are consolidated for disposition in this opinion.

1. Appellants contend that the Court of Appeals erred by failing to defer to the trial court's determination that the Board was authorized to adopt the proxy voting bylaw amendment. The Court of Appeals reviewed the trial court's May 2009 order de novo, citing as authority for this standard of review the principle that the construction of a settlement agreement is a matter of law. *Pounds*, supra, 303 Ga. App. at 674. The order on appeal is not one regarding construction of the Agreement, however. Rather, it concerns uncontroverted evidence regarding acts taken by the Board subsequent to the trial court's December 3, 2008 order approving the Agreement and the legal determination of whether such acts were authorized.

Although the Court of Appeals mischaracterized the nature of the issue on appeal, it did utilize the correct standard for reviewing the trial court's legal conclusions, i.e., a de novo review. See generally *Second Refuge Church &c. v. Lollar*, 282 Ga. 721 (2) (653 SE2d 462) (2007) (trial's court findings of fact following consideration by special master will not be reversed unless clearly erroneous, but conclusions of law are subject to de novo review). Thus, this argument provides no basis for reversal.

2. Appellants cite as error the Court of Appeals's holding that

---

[2] Following the grant of Case No. S10G1345, Appellant's brief was filed on behalf of McGinnis only.

the use of proxy voting pursuant to the Board's bylaw amendment violates the provision of the Agreement[3] requiring that a proposed resolution submitted by the Members regarding the method to be used in future director elections be presented for consideration and a vote at the next meeting of Cobb EMC members. *Pounds*, supra, 303 Ga. App. at 676-677 (1) (a).

(a) The Court of Appeals reasoned that because the bylaw amendment establishes a process by which members appoint a proxy manager to vote their shares at least five business days prior to the meeting, and because once the proxy manager is appointed the amendment does not provide a means for the member to consider and vote on the resolution in person, the resulting vote does not occur "at" the meeting. *Pounds*, supra, 303 Ga. App. at 676-677 (1) (a). While we agree with the conclusion that the Board's proxy voting bylaw amendment violates the terms of the Agreement, see Division 2 (b), infra, the Court of Appeals's reasoning is not the basis upon which our conclusion rests. As a point of clarification, we note that the statute addressing proxy voting for EMCs[4] provides that "a member may be represented [by proxy] *at* a meeting of the membership, [and] vote *thereat* . . . ." (Emphasis supplied.) OCGA § 46-3-268 (a). Moreover, "[e]very proxy shall be revocable at the pleasure of the person executing it," id. at (a) (1), and "the powers of the proxy holder are suspended if the maker is present at a meeting of the members and elects to vote in person." Id. at (a) (3). See also OCGA § 46-3-325 (c) (EMC bylaws may not contain any provision inconsistent with law). Thus, regardless of the procedure and time frames in place for appointing and providing direction to a proxy, the proxy represents the member and casts the proxy vote *at* the meeting.

(b) Nevertheless, the Board's proxy voting bylaw amendment violates the trial court order approving the Agreement because it significantly changes the conditions under which the parties' agreed-upon plan for proposing the option of proxy voting to the Cobb EMC members is implemented.[5] Prior to the Board's proxy voting bylaw amendment, Cobb EMC's bylaws allowed proxy voting only "by a written proxy executed and delivered [to the meeting] by an adult

---

[3] Based on our review of the record in the Court of Appeals, we find meritless McGinnis's argument that the Court of Appeals exceeded its jurisdiction by ruling on the issue of whether the Board's proxy voting bylaw amendment violates the Agreement.

[4] The articles of incorporation or bylaws must authorize the EMC to use proxy voting. OCGA § 46-3-268 (a).

[5] The Agreement provides for a two-step process whereby: (1) a meeting is held within 60 days of approval of the Agreement for members to vote on whether to elect directors by mail-in ballots, subject to the development and implementation of appropriate security measures; and (2) a second meeting is held within 60 days of the first to elect directors using whatever voting method is approved at the first meeting.

member of [the Cobb EMC's member's] family residing in his or her home." Thus, the Agreement was entered into with this type of proxy voting as the only alternative to in-person voting.[6] By authorizing member use of a "designated Cooperative Proxy Manager" to cast a vote, in addition to the options of voting in person or via the previous definition of a proxy, the Board's proxy voting bylaw amendment fundamentally alters the circumstances pursuant to which the members conduct business.

OCGA § 46-3-325 (b) and the Cobb EMC bylaws[7] provide that the Board does not have the power to amend existing bylaws or adopt new bylaws "directly relating to the election of the board of directors." Although, on its face, the Board's proxy voting bylaw amendment may not run afoul of this prohibition because it provides for proxy voting only when the issue of director elections is *not* on the meeting agenda, if applied to the situation at hand, i.e., the terms of the Agreement approved by the trial court, the problem with the Board's proxy voting bylaw amendment becomes evident. In essence, it allows the Board to unilaterally change the method of voting on the issue of the method of voting for directors, which was a core issue addressed by the Agreement. It follows that the Board's proxy voting bylaw amendment violates the spirit, if not the letter, of the Agreement. See OCGA § 13-4-20 (performance of contractual obligations "must be substantially in compliance with [both] the spirit and the letter of the contract"); *McReynolds v. Krebs*, 307 Ga. App. 330 (4) (705 SE2d 214) (2010) (settlement agreement must meet the same enforceability requirements as other contracts).

Appellants argue that the Board's proxy voting bylaw amendment was made in furtherance of the trial court's stated desire to increase transparency in corporate governance. However, the trial court chose to effectuate its intentions through the approval of the parties' Agreement and the Board's actions are not consistent with the provisions set forth therein.

3. Appellants also take issue with the Court of Appeals's alternative holding that the Board's proxy voting bylaw amendment violates the "full cooperation" requirement set forth in the trial court's order approving the Agreement. Because the trial court's May 14, 2009 order finding the Board's proxy voting bylaw amendment to be valid did not address the "full cooperation" requirement of its previous order, the Court of Appeals erred by considering the

---

[6] According to Appellants, fewer than 1,000 of Cobb EMC's 190,000 members have typically attended annual meetings.

[7] Although this provision of the bylaws is not included in the record, the orders of both the special master and the trial court state that Article XI of the Cobb EMC bylaws mirrors OCGA § 46-3-325 (b).

issue. *Brookfield Country Club v. St. James-Brookfield, LLC*, 287 Ga. 408 (3) (696 SE2d 663) (2010) (issues not ruled on by the trial court may not be raised on appeal). For this reason, we reverse the Court of Appeals in part and remand this case for action not inconsistent with this opinion.

*Judgment affirmed in part and reversed in part, and case remanded with direction. Carley, P. J., Benham and Thompson, JJ., Chief Judge A. Wallace Cato and Judge Horace J. Johnson, Jr. concur. Melton, J., dissents. Hines, J., not participating. Nahmias, J., disqualified.*

MELTON, Justice, dissenting.

Nothing in the text of the December 12, 2008 amendment to Cobb EMC's bylaws violates the settlement agreement entered into by the parties to this case. To the contrary, the amendment, which increases the ability of Cobb EMC's members to take part in special meetings, supports the settlement agreement's goal of increasing the transparency of Cobb EMC's corporate structure. Accordingly, I must respectfully dissent.

Analysis of this case requires that we look at the actual text of the settlement agreement and the bylaw amendment which has been brought into question. In relevant part, the settlement agreement provides that, at a meeting held within a certain number of days, Cobb EMC's members:

> will seek an amendment to the by-laws at the next meeting of Cobb EMC members . . . . Such amendment will seek to allow members the right to vote for directors by mail-in ballots subject to the development and implementation of appropriate security measures.

If members were allowed to vote for directors by mail-in ballots, in addition to physically attending a meeting to elect directors, wider membership participation would be encouraged.

In the same spirit of encouraging member participation, the Board adopted the December 12, 2008 amendment to Cobb EMC's bylaws which states:

> At any special meeting of the members of the Cooperative at which the election of directors is not on the agenda, the Board of Directors may provide that a member may be represented and may vote by executing a written proxy authorizing the designated Cooperative Proxy Manager to cast his or her vote. A Cooperative Proxy Manager shall be a person or persons employed by an independent firm

engaged by the Board of Directors of the Cooperative to administer proxy voting. In order to vote by proxy, a member must sign and date a form appointing the Cooperative Proxy Manager to vote for the member by proxy and designating how the Cooperative Proxy Manager shall cast a vote for or against or to abstain from voting on items on the agenda. The Cooperative Proxy Manager shall receive the proxies until the close of business on the fifth business day prior to the meeting date, and shall count such proxies and present the proxies and the results to the Credentials and Election Committee. A written proxy is only valid for a single meeting. Proxy voting as provided in this Section 7a is not permitted where voting is by mail in ballot.

By implementing this amendment to the by-laws, the Board actually increased the ability of members to actively participate at special meetings, a result which, as the trial court found, would undeniably increase the transparency of corporate proceedings.[8] In fact, the trial court found that the "by-law changes are not only consistent with Georgia law and Cobb EMC by-laws, but will also remove significant and historic barriers to member participation. These changes will promote inclusion in the cooperative's governing process." Therefore, rather than contradicting the parties' settlement agreement, this provision enhances it. More members who either cannot or do not wish to attend a special meeting may have their voices heard by proxy on the issue of whether directors may be elected by mail-in ballot. This is directly in line with both the letter and the spirit of the settlement agreement.

Nonetheless, the majority, after conceding that the amendment does not violate the letter of the settlement agreement,[9] concludes that the spirit of the agreement is violated because: "In essence, it allows the Board to unilaterally change the method of voting on the issue of the method of voting for directors, which was a core issue addressed in the Agreement." The majority reaches this dubious conclusion, however, without giving any indication as to what it considers the spirit of the agreement to be or how the amendment

---

[8] Prior to the implementation of this amendment, proxy voting was very limited. Proxy voting could be accomplished only by the delivery of a proxy vote to a meeting by an adult family member residing in the home of the voting member. In transcripts of the proceedings before the court below, the Members have conceded that the limitations of this provision are problematic.

[9] Because the amendment applies only to special meetings at which the election of directors is not on the agenda, it does not violate either OCGA § 46-3-325 (b) or the EMC bylaws which prevent the Board from amending existing bylaws or creating new ones "directly relating to the election of the board of directors."

negatively impacts this undefined spirit. As a practical matter, the bylaw amendment will likely increase the number of members who voice their opinion as to whether directors should or should not be elected by mail-in ballot. Instead of requiring strict attendance at a meeting,[10] the new bylaw allows members to mail in their proxy to a Corporate Proxy Manager, who is required to vote in the manner instructed by the member. This method of voting increases the democratic nature of the voting process at special meetings. Therefore, it is the majority's analysis, not the bylaw amendment, which undermines both the letter and the spirit of the settlement agreement between these parties.

DECIDED JUNE 13, 2011.

*Schreeder, Wheeler & Flint, David H. Flint, Elizabeth L. Fite, King & Spalding, Dwight J. Davis, Daryl L. Joseffer, Phyllis B. Sumner, Paul D. Clement, Akin & Tate, S. Lester Tate III*, for Brown et al.

*Parker, Hudson, Rainer & Dobbs, Tim J. Gutenberger, Jonathan L. Rue*, for McGinnis et al.

*Carr & Palmer, W. Pitts Carr, Dupree & Kimbrough, Hylton B. Dupree, Jr.*, for Pounds et al.

*Robert F. Glass*, amicus curiae.

---

[10] As pointed out by the majority, only a small fraction of members actually attend an annual meeting.