**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 16, 2013**

# In the Court of Appeals of Georgia

A13A0740. THOMPSON v. LAFARGE BUILDING MATERIALS, INC.     DO-041

DOYLE, Presiding Judge.

LaFarge Building Materials, Inc., filed a complaint on an account and personal guaranty, and for foreclosure of liens against Elite Dwellings, LLC, Larry Thompson, and Greer Chapel Development, Inc., alleging that the defendants were liable in the amount of $59,916.88. After the parties filed cross-motions for summary judgment, the trial court determined that Thompson had personally guaranteed the line of credit and was therefore liable for the debt. Thompson now appeals, arguing that the personal guaranty did not satisfy the Statute of Frauds, so the trial court erred by granting LaFarge's motion for summary judgment. For the reasons that follow, we reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the record shows that in 2007, Elite Dwellings, of which Thompson was president and owner, applied for a line of credit with LaFarge in order to purchase building supplies for various construction jobs. The form used by LaFarge is titled "Application for Credit," which is followed by spaces in which an entity identified on the form as "company/individual," in this case Elite, checked the appropriate box regarding whether it is a corporation, partnership, sole proprietorship, or individual status and then provided areas for a name and address. Here, the box for corporation was checked, and Elite Dwellings, LLC, was identified on the blank line next to "Name of Company/Individual."[2] The form showed that the "Description of Business" was residential construction and stated the "year business began" as 2007.

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[2] Under the title "Application for Credit," there is a handwritten notation: "(See Lawrence Yancey)." The record does not identify Yancey, nor does it indicate how he relates to the transaction.

Underneath the business description line, the application stated, "Mr. Thompson has been in business 35+ years." The first page of the application also asked for the company's owner's names and identifying information, requested references, and sought information on whether the credit would be extended for building residential or commercial property.

Page two of the application stated:

This application and the information contained herein is a request for the extension of credit. The Applicant authorizes La[F]arge to obtain a written or oral credit report from any credit reporting agency. The Applicant further authorizes any bank or commercial business with whom the Applicant is doing or has done any type of business to give any and all necessary information to La[F]arge[,] which will assist in the credit investigation. The Applicant further authorizes La[F]arge to reinvestigate the Applicant's credit status from time to time as La[F]arge deems necessary. La[F]arge reserves the right to limit or terminate any extension of credit to Applicant.

It further stated:

The undersigned does hereby certify that he/she is authorized to sign this Application on behalf of the Applicant; that the information contained herein is true; that the Applicant will advise La[F]arge in writing at the address shown above if there are any changes which occur in respect to any of the information, and until such advice is given,

3

La[F]arge may continue to rely on the information; that Applicant will promptly pay when due and all indebtedness that Applicant may now or hereafter owe to La[F]arge, with all cost of collection including 15 percent of the principal and interest as attorney's fees if collected by law or through an attorney at law; that Applicant shall pay to La[F]arge a charge of $25.00 or 5% of the amount of any non sufficient fund check given for payment toward any indebtedness, whichever is greater, for each such non sufficient fund check. The Applicant acknowledges that in the routine course of business La[F]arge may elect to file materialmen's liens to enforce its collection rights. Applicant agrees that all costs of filing, including attorney's fees incurred, shall be a part of the indebtedness applicant may now or hereafter owe to La[F]arge.

Beneath this provision, the document was signed by Arlene D'Aquillo, who listed as her title, "Office Manager."

Below this portion of the application, a section entitled "Continuing Guaranty" was set off within a box, and this section contained Thompson's signature over a line stating "Signature of Individual Guarantor." The "Continuing Guaranty" portion of the application stated:

In consideration of the credit extended to the Applicant identified on page 1 of this Application for Credit, the entirety of said applications being incorporated herein by reference thereto, and other good and

4

valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned guarantor (jointly and severally if more than one), unconditionally guaranty the payment when due of all indebtedness now due or which may become due by Applicant to LAFARGE, together with all costs of collection including 15% of all indebtedness or attorney's fees if collected by or through an attorney at law.

After Elite failed to pay its account totaling $53,142.77, LaFarge brought suit against Elite, Thompson, and Greer Chapel Development, LLC. The defendants answered, and the parties filed cross-motions for summary judgment; LaFarge contended, inter alia, that Thompson's signature in the "Continuing Guaranty" portion of the application for credit constituted a personal guaranty on his part for Elite's account debts owed to LaFarge, and it contended that the document satisfied the Statute of Frauds. The trial court agreed with LaFarge, and it granted summary judgment in LaFarge's favor, entering judgment in the amount of $105,147. This appeal followed.

In a single enumeration of error, Thompson contends that the trial court erred by granting summary judgment in favor of LaFarge because the "Continuing Guaranty" did not satisfy the Statute of Frauds.[3]

> As the Supreme Court explained, under the Statute of Frauds and cases applying the Statute, a promise to answer for another's debt is only enforceable against the promisor if it identifies the debt, the principal debtor, the promisor, and the promisee. It is well settled that a guaranty must identify the principal debtor by name. [If] a guaranty omits the name of the principal debtor, of the promisee, or of the promisor, the guaranty is unenforceable as a matter of law. Even where the intent of the parties is manifestly obvious, where any of these names is omitted from the document, the agreement is not enforceable because it fails to satisfy the Statute of Frauds. Moreover, a court must strictly construe an alleged guaranty contract in favor of the guarantor. The guarantor's liability may not be extended by implication or interpretation. And parol evidence is not admissible to supply any missing essential elements of a contract required to be in writing by our Statute of Frauds. Thus, this Court is not authorized to determine the identity of the principal debtor, of the promisee, or of the promisor by inference as this would entail consideration of impermissible parol evidence.[4]

---

[3] To the extent that Thompson contended below that he signed the continuing guaranty only in his capacity as president of Elite, he has failed to raise the issue on appeal and has therefore abandoned it.

[4] (Citations and punctuation omitted.) *Legacy Communities Group, Inc. v. Branch Banking & Trust Co.*, 316 Ga. App. 496, 498 (729 SE2d 612) (2012), quoting

6

Thompson relies on *LaFarge Bldg. Materials v. Pratt*,[5] in which this Court reversed a grant of summary judgment to LaFarge in a similar circumstance. There, this Court explained that Lowell Pratt could not be held personally liable for the debts of the debtor corporation because "the Guaranty d[id] not incorporate the terms of the [credit] Application by reference. [And], while the Guaranty refer[ed] to the principal debtor as the 'Applicant,' that term [was] not defined in the Application, nor d[id] the Application identify any entity as the 'Applicant.'"[6]

LaFarge contends that the continuing guaranty in *Pratt* is materially different from the continuing guaranty on the Elite Application because Elite's application contains the following operative language that did not appear in the *Pratt* application: "In consideration of the credit extended to the Applicant identified on page 1 of this

---

*Dabbs v. Key Equip. Finance*, 303 Ga. App. 570, 572-573 (694 SE2d 161) (2010). See also *Builder's Supply Corp. v. Taylor*, 164 Ga. App. 127, 127-128 (296 SE2d 417) (1982) (Because "a contract of guaranty … [is] required to [be] entirely in writing under the Statute of Frauds[,]" a contract of guaranty that omits the name of the principal debtor "has no validity[,]" and parol evidence is not admissible to prove the identity of the principal debtor, even if the guaranty is manifestly intended to indemnify the promisee from loss and is otherwise complete and unambiguous and where the putative guarantor admits executing the document.) (citations omitted; emphasis supplied).

[5] 307 Ga. App. 767 (706 SE2d 131) (2011).

[6] (Citations omitted.) Id. at 770 (1).

7

Application for Credit, the entirety of said application being incorporated herein by reference thereto. . . ." Thus, LaFarge argues, the application was incorporated into the personal guaranty in a manner that the application was not incorporated in *Pratt*, and therefore, we should affirm the trial court in this instance because no ambiguity exists as to the identity of the principal debtor.[7] We disagree.

Although it is true that the "Continuing Guaranty" section incorporates the rest of the "Application for Credit," this is simply insufficient because the application itself fails to define "Applicant."[8] While this is an overly technical result, we are constrained by this Court's holding in *Pratt*, in which this Court reviewed the identical application and found it insufficient.[9] Furthermore, "[n]o 'entity' is

---

[7] See *Capital Color Printing, Inc. v. Ahearn*, 291 Ga. App. 101, 106 (1) (661 SE2d 578) (2008) ("Ambiguity exists where the words used in the contract leave the intent of the parties in question . . . . Conversely, no ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is capable of only one reasonable interpretation.") (citation omitted).

[8] See *McDonald v. Ferguson Enterprises, Inc.*, 274 Ga. App. 526 (1) (618 SE2d 45) (2005) (reversing grant of summary judgment in favor of creditor against personal guarantor because "no entity is identified elsewhere in the application as the 'Applicant' or the 'entity'" as the principal debtor to whom the guarantor was agreeing to assume liability). See also *Pratt*, 307 Ga. App. at 770 (1).

[9] 307 Ga. App. at 770 (1) ("Moreover, while the Guaranty refers to the principal debtor as the 'Applicant,' that term is not defined in the Application, nor

8

identified as the 'Applicant'" in the signature line.[10] Accordingly, because the guaranty omits the name of the principal debtor, and because we cannot infer the identity of the applicant even though the intent of the parties appears manifestly obvious, the Statute of Frauds was not satisfied, and the trial court erred by granting summary judgment in favor of LaFarge.[11]

*Judgment reversed. Phipps, C. J., Ellington, P. J., and McFadden, J., concur. Barnes, P. J., concurs in judgment only. Boggs and Branch, JJ., dissent.*

---

does the Application identify any entity as the 'Applicant.') (citing *McDonald*, 274 Ga. App. at 527(1)).

[10] *McDonald*, 274 Ga. App. at 527 n. 3 (holding that signature of owner/officer of debtor corporation was not sufficient to identify debtor corporation as the principal debtor in order to satisfy the Statute of Frauds for purposes of enforcing a personal guaranty). In *Pratt*, the manager provided his printed name and title, but failed to actually sign the application. As in this case, no entity was identified in the signature lines as the "Applicant." See 307 Ga. App. at 767-768, 770 (1).

[11] We note that credit lenders can easily avoid this outcome by not only incorporating all of the terms of the application into the guaranty, but by simply including the name of the principal debtor in the guaranty itself instead of using generic terms such as "applicant" and labeling the name of the principal debtor in the application itself.

9

A13A0740. THOMPSON v. LAFARGE BUILDING MATERIALS,

  INC.


BOGGS, Judge, dissenting.

Because I believe the guaranty here adequately identifies Elite as the "Applicant"/principal debtor, I respectfully dissent. While the term "Applicant" is not defined in the guaranty and application, "[t]his Court has long recognized that dictionaries may supply the plain and ordinary meaning of a word." (Citation and

punctuation omitted.) *Capital Color Printing v. Ahern*, 291 Ga. App. 101, 107 (1) (661 SE2d 578) (2008). Webster's Unabridged Dictionary (2nd edition 1983) defines "applicant" as "one who applies or makes application." I would hold that the principal debtor is sufficiently identified when a guaranty that is part of an "Application for Credit," and incorporates that application by reference, refers to the principal debtor as "Applicant" and the first line following the date and amount on the application lists the "Name of Company/Individual." Elite, the name handwritten on the line next to this heading, is unquestionably the party applying for credit and therefore the "Applicant."

Even if such a holding could be construed to extend the guarantor's obligation by interpretation, I would conclude in the alternative that the guaranty did not run afoul of the Statute of Frauds. I agree with the majority that under the Statute of Frauds, an agreement is not enforceable where it "*omits* the name of the principal debtor, of the promisee, or of the promisor." (Citations, punctuation and footnote omitted; emphasis supplied.) *Legacy Communities Group v. Branch Banking & Trust Co.*, 316 Ga. App. 496, 498 (729 SE2d 612) (2012).

But as explained in *Ahern*, supra, "while the Statute of Frauds prohibits using parol evidence to supply *completely* missing terms, it does not prohibit using parol

2

evidence to explain ambiguities in descriptions." (Citations and punctuation omitted; emphasis supplied.) Id. at 105 (1). This is not a case in which the name of the principal debtor is entirely *omitted* from the guaranty, as in *Legacy Communities Group*, supra, 316 Ga. App. at 498. Rather, it involves an ambiguity in the guaranty and application in the description of the "Applicant." See *Ahern*, supra, 291 Ga. App. at 104-105 (1). Certainly in an application for credit, the party applying for credit will be named therein. Therefore, the question is which name or names listed on the application are the "Applicant." See id. at 105-106 (1).

To resolve any ambiguity as to the entity applying for credit, we may look to parol evidence. Thomas averred that "Elite Dwellings, LLC entered into an application for credit with La[F]arge North America." This testimony was sufficient to resolve any ambiguity created by the absence of a line titled "Applicant" on the application for credit. See *Ahern*, supra. For this reason, under the circumstances of this particular case, I would hold that the guaranty sufficiently identifies the principal debtor as Elite and satisfies the Statute of Frauds.

The cases cited by the majority are distinguishable. *LaFarge Bldg. Materials v. Pratt*, 307 Ga. App. 767 (706 SE2d 131) (2011), is not controlling, because in that case, this court only held that the guaranty violated the Statute of Frauds because it

3

did not incorporate the application by reference. Id. at 771 (1). Therefore, the opinion's discussion concerning the failure of the application to identify an entity as "Applicant" is non-binding dicta. Moreover, it did not discuss ways in which that failure might be cured or explained. *McDonald v. Ferguson Enterprises*, 274 Ga. App. 526 (618 SE2d 45) (2005), also does not demand a different result. In *McDonald*, the guaranty provided that the creditor was extending credit to the "entity applying for credit above ('Applicant')." Id. at 526 (1). We held that there was no entity identified in the application as "Applicant" or "entity." Id. But there is no indication that Dunn Plumbing, the alleged principal debtor, was listed anywhere on the application at issue, which was not incorporated by reference. See id. at 527 (1) n.2. We therefore held that the guaranty failed to identify the principal debtor and was unenforceable. Id. a 527 (1).

I agree with the majority that the better practice is to simply name the principal debtor instead of using a description or title. But under the particular circumstances of this case, I would hold that the guaranty satisfies the Statute of Frauds.

I am authorized to state that Judge Branch joins in this dissent.

4