In the Supreme Court of Georgia

Decided:   September 22, 2014

S13G1711.  LAFARGE BUILDING MATERIALS, INC. v. THOMPSON

NAHMIAS, Justice.

On October 23, 2007, Larry B. Thompson executed a continuing guaranty in favor of Lafarge Building Materials, Inc., as part of an application for credit submitted by his company, Elite Dwellings, LLC.  During 2008, Elite Dwellings ordered building materials under the account established based on the application but then failed to pay Lafarge for the materials.  In May 2009, Lafarge sued Elite Dwellings and Thompson, alleging that they were jointly and severally liable for the debt.[1]  Lafarge and Thompson eventually filed cross-motions for summary judgment, and in October 2012, the trial court ruled that the guaranty satisfied the Statute of Frauds and entered summary judgment against Elite Dwellings and Thompson jointly and severally for $105,147.

Elite Dwellings did not appeal the judgment, but Thompson did.  A

---

[1] Lafarge also sued Greer Chapel Development, LLC, the owner of one of the properties for which Lafarge supplied building materials.  Lafarge recorded a materialman's lien on that property and on seven others owned by Elite Dwellings.  Greer Chapel is not involved in this appeal.

divided Court of Appeals reversed, holding that the guaranty was unenforceable because it did not sufficiently identify the name of the principal debtor and thus failed to satisfy the Statute of Frauds.[2]  See Thompson v. LaFarge Building Materials, Inc., 323 Ga. App. 276, 280-281 (746 SE2d 908) (2013).  We granted Lafarge's petition for certiorari and posed the following question:

> Did the Court of Appeals err in holding that the guaranty agreement at issue here did not identify the principal debtor with sufficient specificity to satisfy the Statute of Frauds?  Compare Capital Color Printing, Inc. v. Ahern, 291 Ga. App. 101 (661 SE2d 578) (1) (2008), with Lafarge Building Materials, Inc. v. Pratt, 307 Ga. App. 767 (706 SE2d 131) (1) (2011).

We conclude that the Court of Appeals did err, and we therefore reverse its judgment.

1.     The application for credit and continuing guaranty at issue comprise two pages, with the guaranty set off in a box at the bottom of the second page. In the first section on the first page of the application, Elite Dwellings, LLC is listed as the "Name of Company/Individual," with Larry B. Thompson listed as the owner.  Three trade references are then listed, as is the Bank of America on the line for bank references.  The application is signed on the second page by

_____

[2] Four judges joined the majority opinion, one judge joined in judgment only, and two judges dissented.

Elite Dwellings's office manager "on behalf of the Applicant." The "General Provisions" section on that page provides for Lafarge to investigate the credit history of the "Applicant," saying:

> This application and the information contained herein is a request for the extension of credit. The Applicant authorizes Lafarge to obtain a written or oral credit report from any credit reporting agency. The Applicant further authorizes any bank or commercial business with whom the Applicant is doing or has done any type of business to give any and all necessary information to Lafarge which will assist in the credit investigation. The Applicant further authorizes Lafarge to reinvestigate the Applicant's credit status from time to time as Lafarge deems necessary. Lafarge reserves the right to limit or terminate any extension of credit to Applicant.

In the continuing guaranty box, Thompson signed the line for "Signature of Individual Guarantor." The guaranty incorporates the application and describes the party whose debt is guaranteed as the "Applicant," saying:

> In consideration of the credit extended to the Applicant identified on page 1 of this Application for Credit, the entirety of said applications [sic] being incorporated herein by reference thereto, . . . the undersigned guarantor (jointly and severally if more than one), unconditionally guaranty [sic] the payment when due of all indebtedness now due or which may become due by Applicant to LAFARGE . . . .

2. Under Georgia's Statute of Frauds, a personal guaranty of a debt is not enforceable unless it is in writing, is signed by the party being charged as the

3

guarantor, and identifies the debt, the principal debtor, the promisor, and the promisee. See John Deere Co. v. Haralson, 278 Ga. 192, 193 (2004). See also OCGA § 13-5-30 (2) (providing that "[a] promise to answer for the debt, default, or miscarriage of another" is not binding on the promisor unless it is in writing and signed by the promisor). The only disputed issue in this appeal is whether the principal debtor is sufficiently identified by name.

The Court of Appeals's majority opinion relied on Pratt and McDonald v. Ferguson, 274 Ga. App. 526 (618 SE2d 45) (2005), to conclude that the principal debtor is not identified because both the guaranty and the incorporated application "fail[] to define 'Applicant.'" Thompson, 323 Ga. App. at 280. Those two cases are, however, factually distinguishable from this one.

In Pratt, the Court of Appeals held that a guaranty using language almost identical to the language used in the guaranty in question here, including referring to the principal debtor as "Applicant," failed to identify the principal debtor. See 307 Ga. App. at 770. Unlike the guaranty in this case, however, the guaranty in Pratt did not incorporate the application. See id. That is a critical difference. Because the party applying for credit was named only in the application and the application was not incorporated into the guaranty, the name

4

of the applicant in that case was not designated anywhere in the guaranty.

In McDonald, the Court of Appeals held that a guaranty failed to satisfy the Statute of Frauds because the guaranty identified the principal debtor as the "applicant" or "entity," but neither the guaranty nor the application identified the party that was the "applicant" or "entity," and the purported principal debtor was mentioned only in the billing information, making it unclear what party was the "applicant." See 274 Ga. App. at 526-527.[3] By contrast, in this case Elite Dwellings is listed on the first page of the application on the blank for "Name of Company/Individual" located on the first line after the date and amount under the heading "Application for Credit." In addition, Elite Dwellings's office manager signed the application "on behalf of the Applicant."

The dissenting opinion below distinguished Pratt and McDonald and relied instead on Capital Color. See Thompson, 323 Ga. App. at 281 (Boggs, J., dissenting). In Capital Color, the guaranty identified the principal debtor as the "customer" and the "purchaser," and the Court of Appeals held that the identity of the "customer" and "purchaser" was clear from the incorporated

---

[3] Although it is not clear from the opinion in McDonald whether the application was expressly incorporated into the guaranty, the guaranty did refer to the application, and the Court of Appeals considered the full application in its analysis. See 274 Ga. App. at 526 & n.2.

5

application. See 291 Ga. App. at 103, 106. The entity found to be the principal debtor was listed in the "customer" box on the first page of the application, and while the application did not label any entity as the "purchaser," the court looked to the "usual and common signification" of "customer" and "purchaser" to conclude that they referred to the same entity. Id. at 106-107. As the court explained, "no ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is 'capable of only one reasonable interpretation.'" Id. at 106 (citation omitted).

It is similarly appropriate to define the term used to identify the principal debtor in the guaranty here – "Applicant" – using its usual and common signification. To understand a contract, we must read and understand the words used in the contract. And unless the contract indicates otherwise, "we generally accept that contractual terms carry their ordinary meanings." Archer W. Contractors, Ltd. v. Estate of Pitts, 292 Ga. 219, 224 (2012) (citing OCGA § 13-2-2 (2), which says that "[w]ords [in contracts] generally bear their usual and common significance"). We reject the view of the majority opinion below that applying the ordinary meaning of a word used in a contract requires a court to look outside the contract and extends the guarantor's liability "'by implication

6

or interpretation.'" Thompson, 323 Ga. App. at 279 (citation omitted).[4]  As the dissent below pointed out, "applicant" is ordinarily defined as "'one who applies or makes application.'" 323 Ga. App. at 280 (Boggs, J., dissenting) (citing Webster's Unabridged Dictionary (2d ed. 1983)).  No argument has been made that the word "applicant," as used in the guaranty before us, means anything different than what it usually means.

When read in conjunction with the incorporated application, and with the word "applicant" bearing its usual and common meaning, the guaranty here identifies Elite Dwellings as the party applying for credit, which plainly makes that company the "Applicant" and therefore the principal debtor.  The Court of Appeals majority erred in holding otherwise.  In closing, however, we note that both sides of the Court of Appeals agreed on one point, to which we add our agreement as well: the better practice for lenders – the approach that can forestall extended litigation like this case – is to simply name the principal debtor directly in the guaranty.  See Thompson, 323 Ga. App. at 281 n.11; id. at 282 (Boggs, J., dissenting).

Judgment reversed.  All the Justices concur.

---

[4]  The court in Pratt concluded that the application in that case, which was not incorporated into the guaranty, did not identify any entity as the "Applicant" or define the term "Applicant."  307 Ga. App. at 770.  To the extent that Pratt suggests that the ordinary meaning of "applicant" cannot be used in construing an application or guaranty, we disapprove that suggestion.