In the Supreme Court of Georgia

Decided:   March 7, 2016

S15A1684. ATLANTA DEVELOPMENT AUTHORITY, d/b/a
INVEST ATLANTA v. CLARK ATLANTA UNIVERSITY, INC.

HINES, Presiding Justice.

This Court granted defendant Atlanta Development Authority d/b/a Invest

Atlanta ("Invest Atlanta") an interlocutory appeal of the superior court's denial

of its motion to dismiss plaintiff Clark Atlanta University, Inc.'s ("CAU")

complaint for declaratory judgment, which sought a declaration regarding

CAU's  rights to three adjoining parcels of real property in southwest Atlanta

(collectively the "Property") that it donated to Morris Brown College ("MBC")

in 1940.[1]  For the reasons which follow, we affirm  the judgment of the superior

court.

On February 10, 1940, for the nominal consideration of $1.00, CAU

[1]As stated in the complaint for declaratory judgment, in 1988, Atlanta University and Clark College consolidated to form Clark Atlanta University, and Clark Atlanta University is the successor-in-interest to Atlanta University, the entity that donated the Property to Morris Brown College in 1940.  For the purpose of this appeal, "CAU" is used to refer to both Clark Atlanta University and Atlanta University.

executed a deed ("Deed") for the Property, which was composed of three adjoining parcels totaling approximately 13 acres, to MBC. At the time the Property was donated, MBC was experiencing financial difficulties and was at risk of losing its campus. The one-page Deed conveyed all three parcels, which will hereinafter be referred to as Parcel 1, Parcel 2, and Parcel 3, and was structured, as follows.

The sole granting clause ("Granting Clause") appears at the top of the Deed and states, in relevant part:

> WITNESSETH: That the said party of the first part, for and in consideration of the sum of One Dollar, and for the purposes herein set forth, in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold and conveyed and by those presents does grant, bargain, sell and convey unto the said party of the second part . . . .

Next is the legal description of Parcel 1, and after it is the statement:

> The above property is conveyed subject to the use by [a named individual] of house and property now occupied by him, so long as he shall remain in the employ of [CAU].

Following this are the legal descriptions of Parcels 2 and 3. At the conclusion of the three legal descriptions is the use restriction ("Restriction"):

> The above property is conveyed subject to the condition that [MBC] shall use the same for educational purposes, to wit: Undergraduate work in the

2

fields of the Arts and Sciences, except that nothing in this clause is to be construed as prohibiting [MBC] from offering graduate course in Theology, if it chooses to do so.

The next sentence provides ("Reverter "):

If at any time the said [MBC] shall cease to use said property for the particular educational purposes above set forth, the title to said property shall revert to and become vested in the Grantor or its successors.

The Deed concludes ("Habendum Clause"):

TO HAVE AND TO HOLD the said bargained premises, together with all and singular the rights, members and appurtenances thereof, to the same being, belonging or in any wise appertaining to the only proper use, benefit and behoof of it, the said party of the second part, IN FEE SIMPLE.

In August 2012, MBC filed for Chapter 11 bankruptcy relief (the "Bankruptcy") in an attempt to prevent the foreclosure and sale at auction of its campus. As a result of the Bankruptcy, in May 2014, MBC requested that the bankruptcy court approve the sale of a large portion of its campus, including the Property, to Invest Atlanta. In June 2014, the bankruptcy court held a hearing in the matter at which it noted that it was "clear that [MBC] can only sell whatever interest in [the] property it has" and that it was "not making any findings regarding the extent of [MBC's] interest in the reversionary property." The court further stated, "[a]ll that is being authorized is that [MBC] can sell

whatever interest it has." On June 23, 2014, the bankruptcy court issued an order authorizing and approving the sale of the Property to Invest Atlanta; the order expressly provided that Invest Atlanta was "accepting the title subject to any alleged and recorded interest held by CAU." On September 5, 2014, CAU filed the present complaint for declaratory judgment, seeking, inter alia, a declaration and judgment that the Deed transferred the Property in the form of a fee simple determinable estate or a fee simple estate subject to a limitation, that CAU therefore had a valid automatic reversionary interest in the Property, and that such reversionary interest was triggered when MBC stopped using the Property for educational purposes and sold it to Invest Atlanta; alternatively, CAU asked for a declaration and judgment that with respect to any portions of the Property that were then being used for educational purposes by MBC, if at any time MBC ceased to so use such portions of the Property, title to such property would immediately and automatically revert to CAU. On October 7, 2014, Invest Atlanta moved to dismiss the complaint, challenging, inter alia, the validity, scope, and application of the Restriction and the Reverter.

On February 20, 2015, the superior court entered the order now at issue, denying Invest Atlanta's motion to dismiss. In so doing, the superior court

determined that the Restriction is valid as falling within the "charitable purposes" exemption to the general rule against restraints on alienation, that the Restriction applies to all three parcels of the Property, that MBC's sale of the Property to Invest Atlanta did not constitute a "use" for educational purposes, and that the Deed conveyed a fee simple determinable estate, i.e., a fee simple estate subject to the limitation of the Restriction and the Reverter.[2]

## I. Standard of Review

It is inappropriate to grant a motion to dismiss for failure to state a claim unless the allegations of the complaint at issue demonstrate to a certainty that the plaintiff would not be entitled to any relief under any set of facts which could be proved in support thereof. *City of Atlanta v. Mitcham*, 296 Ga. 576, 577 (1) (769 SE2d 320) (2015). The appellate court is to review the denial of a motion to dismiss de novo, and in so doing, construe the pleadings in a light most favorable to the plaintiff, with any doubts resolved in the plaintiff's favor. *Bd. of Regents of Univ. Sys. of Georgia v. Brooks*, 324 Ga. App. 15, 15-16 (749 SE2d 23) (2013).

---

[2]The superior court rejected Invest Atlanta's contention that the Reverter Clause was merely a covenant running with the land, and therefore, subject to the 20-year time limit set forth in OCGA § 44-5-60 (b).

5

II. Validity of Restriction and Reverter

The threshold substantive question in regard to the Deed is the validity of the Restriction and the Reverter. And, it is plain that they are valid and enforceable. As the superior court noted in its ruling, in general the type of forfeiture as in this case is invalid as an impermissible restraint on alienation; however, Georgia recognizes an exception to the general rule in the situation in which real property is transferred to a charitable group for charitable purposes. *First Rebecca Baptist Church, Inc. v. Atl. Cotton Mills*, 263 Ga. 688, 689 (3) (440 SE2d 159) (1993). The reasoning is that inasmuch as a donor may make a gift for charitable purposes which is perpetual in duration, as a corollary of this right and in order to effectuate the primary purpose of the gift, the donor may impose a condition that the gifted property is not to be alienated, but is to continue in the hands of the donee in perpetuity. Id. Public policy favors giving the donor's distinct charitable interest greater weight than general prohibitions against the remoteness of vesting and restrictions on alienation. Id.

Here, there is little question that by the Deed, donor CAU intended to gift the Property to what it deemed a charitable organization,[3] MBC, and did

---

[3]This Court makes no finding regarding MBC's legal status as a charitable organization.

6

so in order to accomplish educational purposes, which are proper matters of charity. See *Moore v. Wells*, 212 Ga. 446, 451 (93 SE2d 731) (1956).

### III. Scope of Restriction and Reverter

The next question is the scope and applicability of the Restriction, and thus, of the Reverter. The superior court determined that the Restriction applies to all three parcels, and so it does. The construction of a deed which is unambiguous is to be handled like any other contract, that is, it is a matter for determination by the court, and its meaning and effect are questions of law for the court. *Turk v. Jeffreys-McElrath Mfg. Co.*, 207 Ga. 73, 75 (2) (60 SE2d 166) (1950). The construction of a contract involves three steps: first, the court must determine whether the language therein is clear and unambiguous, and if it is, the contract is to be enforced according to its clear terms; the contract alone is looked to for its meaning; next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity; and finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by the trier of fact. *City of Baldwin v. Woodard & Curran*, 293 Ga. 19, 30 (3) (743 SE2d 381) (2013).

As the superior court noted, the Deed is not ambiguous as to the application of the Restriction and the Reverter to all three parcels of the Property. The physical layout of the brief one-page Deed itself, which conveys the three parcels simultaneously supports this conclusion. So too does the fact that the parcels are conveyed pursuant to and as part of a single charitable gift. The legal descriptions also make plain that the parcels adjoin each other so as to comprise a continuous tract of land. Other clear language used in the Deed likewise compels the conclusion that the Restriction and the Reverter are to apply equally to Parcels 1, 2, and 3. The words in a deed, like in other contracts, carry their ordinary meanings. *Lafarge Bldg. Materials, Inc. v. Thompson*, 295 Ga. 637, 640 (2) (763 SE2d 444) (2014). And, so they should in this case.

Such clear language begins with the sole Granting Clause, which plainly applies to the Property in toto, and states that the conveyance is "for the purposes herein set forth"; the only purpose set forth is that the Property be used for specified aspects of education, i.e., the Restriction on use. The Restriction itself expressly states that it applies to the "above property"; the Restriction does not distinguish among the three parcels in any way, or use any terminology

8

suggesting a parsing of the Property. And, it could easily have done so.[4]

As to the conditional language following the legal description of Parcel 1, it does not insulate the tract from the Restriction and the Reverter or alter the nature of the ultimate estate in the Property which is conveyed by the Deed. The language constitutes nothing more than an easement in gross in favor of the named individual. An easement in gross is a mere personal right in the land of another, and inasmuch as it is an interest in land, the Deed properly contains its express grant; this would include language sufficient to designate with reasonable certainty the land over which the easement extends. *Dyer v. Dyer*, 275 Ga. 339, 340-341 (1) (566 SE2d 665) (2002). It does not alter the applicability of the Restriction and the Reverter. Nor does the easement in gross for the purpose of the residence of the named employee on Parcel 1 of the Property conflict in any way with the expressed intent that the Property be used for educational purposes. The fact that a structure on the real estate of a college campus serves, at least for a time, as a residence for a college employee fosters rather than defeats such a purpose, and is in keeping with the reality of

_____

[4]As CAU suggests in its brief, "above" could have been slightly modified such as "some of the above," "immediately above," "adjacent to," etc.

dormitory and other student and faculty residence facilities on many college campuses.

As for the use of the word "premises" instead of the word "property" in the Deed's Habendum Clause, this in no manner alters, much less diminishes, the plain meaning and scope of "property" as used in the Restriction and the Reverter. The term "premises" is merely customary and boilerplate language in a Habendum Clause. See 2 Daniel F. Hinkel, Pindar's Ga. Real Estate Law & Procedure § 19:29 (7th ed., updated April 2015) (explaining that such language actually serves no useful purpose and could be omitted entirely). And, in deeds, the terms "premises" and "property" may be used interchangeably to refer to the same real estate. See, e.g., *Statham v. Kelly*, 276 Ga. 877 (584 SE2d 246) (2003) ("As a part of the consideration for this transfer it is expressly stipulated that should the grantees herein ever fail to use the *premises* described herein for their personal residence the *property* shall revert to the grantor and any interest held by the grantees herein shall be terminated." (Emphasis supplied and emphasis omitted.)) This Court has long acknowledged that the words may be synonymous in regard to a use restriction and reversionary interest. See *Wills*

10

*v. Pierce*, 208 Ga. 417 (67 SE2d 239) (1951).

Even if the Deed was found to be ambiguous in regard to the reach of the Restriction and the Reverter, the same construction results. In construing a deed, the paramount consideration and overriding goal is to ascertain and give effect to the intent of the parties. *Second Refuge Church of Our Lord Jesus Christ, Inc. v. Lollar*, 282 Ga. 721, 724-725 (2) (653 SE2d 462) (2007); *Moore v. Wells*, 212 Ga. 446, 449 (1) (93 SE2d 731) (1956). And, in general, the parties' intent is to be determined from the deed's text alone, and extrinsic evidence will be used to interpret the deed only when its text is so ambiguous that its meaning cannot be determined through application of the ordinary rules of textual construction. *Second Refuge Church of Our Lord Jesus Christ, Inc. v. Lollar*, supra at 724-725 (2). Furthermore, the deed must be examined in its entirety in order to determine the parties' intent and to be given a construction which is consistent with reason and common sense. *Woodbery v. Atlas Realty Co.*, 148 Ga. 712 (98 SE 472) (1919). Each provision of the Deed is to be given effect and interpreted so as to harmonize with the others. *Horwitz v. Weil*, 275 Ga. 467 (569 SE2d 515) (2002). So too, the circumstances and purpose of

the Deed must be given due weight.

Id. at 468.

Application of these rules of construction compels the conclusion that the Restriction and the Reverter are intended to apply to all three parcels.  As has been detailed, the structure and language of the Deed reflects the parties' clear intent that the Property, in toto, comprise a donation to MBC of a unified tract of land for the one and only purpose expressed in the Deed, i.e., for the particular aspects of education set forth therein.[5]

## IV. Estate Conveyed

The Restriction and the Reverter  create a limitation upon the estate conveyed by the Deed, that is, that the estate is vested in the grantee, MBC, so long as the Property is used for the specified educational purposes; this limitation on the conveyed estate creates a defeasible fee or, more precisely, a fee simple determinable estate.  *Flaum v. Middlebury*,  246 Ga. 682 (272 SE2d

---

[5]Although not necessary to the present analysis in the context of the motion to dismiss, there is evidence of record, albeit outside the four corners of the Deed, which suggests that the parties considered the Restriction and the Reverter to apply to the Property as a whole.  In general, the parties construction of a contract, as shown by their acts and conduct, is entitled to much weight and may, in some circumstances, be conclusive. *Head v. Scanlin*, 258 Ga. 212, 213 (1) (367 SE2d 546) (1988).

695) (1980). Indeed, the hallmark of a fee simple determinable estate is that it provides for automatic reversion of the estate upon the occurrence of the limitation. Id. And, that is precisely the situation in this case.

## V. Reverter

The remaining question is whether MBC's sale of the Property to Invest Atlanta constitutes "use" of the Property for the purpose of the application of the Reverter. Certainly, there is authority for the proposition that a grantee's use of real property for a specified purpose may be inconsistent with or repugnant to the grantee's conveyance of such property to another. See *Statham v. Kelly*, 276 Ga. 877(584 SE2d 246) (2003); *Wills v. Pierce*, 208 Ga. 417 (67 SE2d 239) (1951). However, as is the case in both *Statham v. Kelly* and *Wills v. Pierce*, this conflict arises in the circumstance in which the real property is to be used by the grantee as the grantee's home or residence. Thus, the sale of the real estate is, on its face, incompatible with the specified residential use in regard to the attempted reversionary interest. However, this is not the situation in the case at hand.

To begin with, the Restriction and the Reverter are legally enforceable.

13

See Division II, supra. Second, the express "use" for the donated Property is that of "educational purposes" as specified in the Deed. Certainly, as a general proposition, real property may be "used" for educational purposes in many ways, which might in another context include being sold to raise money for educational purposes. But, the very specific language of the Restriction and the Reverter militate against such a broad construction of use. As noted, the Restriction provides not only that the Property be used for "educational purposes" but then lists the fields of study which qualify as such "educational purposes." What is more, the Reverter is triggered when grantee MBC itself ceases to use the Property "for the particular educational purposes above set forth" in the Deed. Thus, even if MBC's utilization of the proceeds from the sale of the Property could qualify as its "use" of the Property generally for educational purposes, this does not address the particularity of educational purpose set forth in the Deed. Moreover, once the Property is alienated, MBC loses control over it for any purpose, and as to the sale proceeds, their use and eventual exhaustion would be pragmatically impossible to monitor in regard to any question of application of the Restriction and the Reverter. Consequently,

14

in the present circumstances, sale of the Property to Invest Atlanta does not qualify as MBC's "use" of the Property as contemplated in the Deed.

## VI. Conclusion

The Deed transferred the property from CAU to MBC in the form of a fee simple determinable estate. Therefore, CAU has a valid reversionary interest in the Property, which was triggered when MBC sold the Property to Invest Atlanta. Accordingly, the judgment of the superior court is properly affirmed.

Judgment affirmed. All the Justices concur, except Benham, J., not participating.