[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11964
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-01236-ODE

MAXUM INDEMNITY COMPANY,

Plaintiff - Appellee,

versus

COLLIERS INTERNATIONAL - ATLANTA, LLC, et al.,

Defendants,

ALEXANDER DEITCH,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(June 15, 2021)

Before WILSON, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

This appeal concerns the interpretation of an insurance policy which affords coverage to an innocent insured even when the principal insured failed to give timely notice of a claim.

Plaintiff-appellee Maxum Indemnity Company (Maxum) issued to Colliers International, LLC (Colliers) a professional liability insurance policy for an initial period of January 1, 2015, to January 1, 2016.  The policy included a supplemental extended reporting period for February 1, 2016, through February 1, 2017 (Extended Reporting Period).  The policy states: "THIS IS A CLAIMS MADE AND REPORTED INSURANCE POLICY."

Section I.1.B(3) (Reporting Provision) states that the policy applies "only if[] [a] 'claim' for 'damages' because of the rendering of or failure to render 'professional services' is first made against any 'insured' . . . and reported to us during the policy period or any Extended Reporting Period."  Section IV.2 (Notice Provision) instructs insureds on how to give notice of an incident to Maxum. Section VII.1 (Innocent Insured Provision) provides:

> Whenever coverage under this insurance would be excluded, suspended or lost . . . [b]ecause of noncompliance with any condition relating to the giving of notice to [Maxum] with respect to which any other "insured" shall be in default solely because of the failure to give such notice or concealment of such failure by one

2

or more "insureds" responsible for the loss or damage otherwise insured hereunder[,] . . . such failure to give notice provided that if the condition be one with which such "insured" can comply, after receiving knowledge thereof, the "insured" entitled to the benefit of this Section shall comply with such condition promptly after obtaining knowledge of the failure of any other "insured" to comply therewith.

On March 20, 2016, Mattress Firm, Inc. (Mattress Firm) sent Colliers a letter advising it of a potential lawsuit (claim) against Colliers and its Senior Vice President, Alexander Deitch.  On June 29, 2017, Colliers provided Maxum with notice of the claim.  On October 30, 2017, Mattress Firm filed suit against Colliers and Deitch.  Maxum issued a reservation-of-rights letter to Colliers on January 5, 2018, honoring its defense obligations to Colliers and reserving the right to withdraw its defense and decline indemnity to Colliers.  Maxum noted that Deitch had not yet demanded coverage.

However, on November 30, 2017, Deitch had requested from Colliers any and all insurance policies.  Colliers provided one insurance policy to Deitch—a Liberty International Underwriters (Liberty) policy.  Deitch requested coverage from Liberty, which it denied.  Colliers did not provide a copy of the Maxum policy to Deitch until March 2, 2018.  Upon discovering the existence of the policy, Deitch requested coverage from Maxum.  Maxum did not respond to the request.  Instead, it filed suit in the Northern District of Georgia, seeking a

3

declaration that it has no duty to provide liability coverage to Deitch under the policy.

Maxum alleged four counts.  In Count I, Maxum contended that it did not owe coverage because Colliers and Deitch did not report the claim within the reporting period set forth in the Reporting Provision.  In Counts II through IV, Maxum contended that the policy does not afford coverage for the claim.  Maxum filed a motion for partial summary judgment on Count I and moved for a declaration that Maxum has no duty to defend.  In opposition to the motion, Deitch argued that he is entitled to coverage under the Innocent Insured Provision.  He asserted that the Innocent Insured Provision provides that, in the event that Colliers failed to timely report the claim, Deitch does not lose coverage so long as he reported the claim promptly after learning of the failure of any other insured to comply.  This, Deitch said, is exactly what happened; by no fault of his own, Deitch did not learn of the policy until March 2, 2018, and reported the claim to Maxum on March 15, 2018.

Maxum filed a second motion for partial summary judgment, seeking a declaration as a matter of law that it did not owe Colliers or Deitch coverage for the claims and damages asserted.

The district court issued an order granting Maxum's first motion for summary judgment and denying as moot Maxum's second motion for summary

judgment.  With respect to the first motion, the district court held that the Innocent Insured Provision does not apply to Deitch because it only allows coverage for an innocent insured when another insured fails to comply with the notice requirements in the Notice Provision, not the reporting requirements in the Reporting Provision.

Deitch argues on appeal that the district court erred in finding that the Innocent Insured Provision only applies in cases where another insured fails to abide by the requirements in the Notice Provision.  Deitch contends that the Innocent Insured Provision extends to cases like his where another insured fails to abide by the requirements in the Reporting Provision.

## I.  STANDARD OF REVIEW AND APPLICABLE LAW

We review de novo a district court's grant of summary judgment, and draw all reasonable inferences in the light most favorable to the nonmoving party.  *Great Am. Alliance Ins. Co. v. Anderson*, 847 F.3d 1327, 1331 (11th Cir. 2017).  As a federal court sitting in diversity jurisdiction, Georgia law applies.  *See Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998) (apply the law of the forum state).

"An insurance policy is simply a contract, the provisions of which should be construed as any other type of contract."  *Am. Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co., Inc.*, 707 S.E.2d 369, 371 (Ga. 2011).  Under Georgia law, "[t]he construction of a contract involves three steps."  *Atlanta Dev. Auth. v. Clark*

*Atlanta Univ., Inc.*, 784 S.E.2d 353, 357 (Ga. 2016). First, the court determines whether the language of the contract is "clear and unambiguous." *Id.* If it is, the court enforces the contract "according to its clear terms." *Id.* Next, if the contract is ambiguous, the court applies the Georgia rules of contract construction to resolve the ambiguity. *Id.* Finally, if that ambiguity remains, "the issue of what the ambiguous language means and what the parties intended must be resolved by the trier of fact." *Id.*

An ambiguity exists "when a provision in a policy is susceptible to more than one meaning, even if each meaning is logical and reasonable." *Blue Cross & Blue Shield of Ga., Inc. v. Shirley*, 699 S.E.2d 616, 619 (Ga. Ct. App. 2010). Ambiguous contracts "must be construed against the insurer and in favor of the insured." *Id.*

## II.  DISCUSSION

## A.  The Policy Is a Claims-Made-and-Reported Policy.

As an initial matter, the policy is a claims-made-and-reported policy. A claims-made-and-reported policy is a policy "wherein the coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurer within the policy term." *Serrmi Prods., Inc. v. Ins. Co. of Pa.*, 411 S.E.2d 305, 306 (Ga. Ct. App. 1991). The "essence" of a claims-made-and-reported policy is "notice to the carrier within the policy period." *Id.* A claims-made-and-reported

6

policy is "distinct from an occurrence policy." *Id.* "An occurrence policy is a policy in which the coverage is effective if the negligent act or omission occurs within the policy period, regardless of the date of discovery or the date the claim is made or asserted." *Id.* The text of the policy here unambiguously indicates that it is a claims-made-and-reported policy. It states in all capital letters: "THIS IS A CLAIMS MADE AND REPORTED INSURANCE POLICY."

This is further supported by the language in the policy making clear that timely reporting is a condition precedent to coverage. "Under Georgia law, a condition precedent to a right or obligation set out in a contract must be satisfied in order for the right to accrue." *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1131 (11th Cir. 2014). Words such as "on condition that," "if," and "provided" indicate that a term is a condition precedent. *See Self v. Smith*, 115 S.E.2d 355, 358 (Ga. 1960). The Reporting Provision in the policy states: "This insurance applies *only if* . . . [a] 'claim' for 'damages' . . . is first made against any 'insured' . . . and reported to us during the policy period or any Extended Reporting Period we provide . . . ." (emphasis added). An insured is covered by the policy only if a claim is reported during the policy period.

**B.  The Innocent Insured Provision Unambiguously Allows Coverage for an Innocent Insured when Another Insured Fails to Comply with the Reporting Provision Requirements.**

7

Under Georgia law, an ambiguity arises when a policy is susceptible to more than one "logical and reasonable" interpretation. *Hurst v. Grange Mut. Cas. Co.*, 470 S.E.2d 659, 663 (Ga. 1996). Thus, we must ask whether it would be the only logical and reasonable interpretation to hold that the Innocent Insured Provision, which covers an insured when another insured fails to comply "with any condition relating to the giving of notice" to Maxum, does not cover an insured when another insured fails to comply with the Reporting Provision. We find that it is not. Instead, we find that the only reasonable interpretation of the Innocent Insured Provision is that it applies to instances where an innocent insured would lose coverage due to another insured's failure to comply with the requirements surrounding the transfer of information about a claim, including the reporting requirements.

The operative terms here are "notice" and "reporting." Words in an insurance policy generally bear their usual and common meaning. O.C.G.A. § 13-2-2(2). "An insurer is entitled, of course, to define terms used in its insurance policies as it sees fit, and it may choose to define a term in an unusual and uncommon way." *Taylor Morrison Servs., Inc. v. HDI-Gerling Am. Ins. Co.*, 746 S.E.2d 587, 590 (Ga. 2013). "But unless the policy itself indicates that a term is used in an unusual sense, we attribute to that term its usual and common meaning." *Id.* In striving to give a word its ordinary meaning, we can resort to the dictionary

8

definitions "consistent with the plain meaning of the phrase in the policy" when a definition is absent from the policy. *See Dixon v. Home Indem. Co.*, 426 S.E.2d 381, 383 (Ga. Ct. App. 1992). That is the case here, as the policy does not define "notice" or "reporting." The dictionary definition of notice is "a written or printed announcement." *Notice*, Black's Law Dictionary (11th ed. 2019). The dictionary definition of report is "a formal oral or written presentation of facts or a recommendation for action." *Report*, Black's Law Dictionary. Under *Black's Law Dictionary*, both notice and report mean a transfer of information from one party to another. Absent from the policy is anything defining the terms differently or distinguishing them from each other. In fact, the policy uses the terms interchangeably throughout. For example, the Reporting Provision says that "[t]his insurance applies only if . . . a 'claim' . . . is first made . . . and reported to us during the policy period" and then, shortly thereafter, states that "[a] 'claim' . . . will be deemed to have been made at the earlier of the following times: (1) When notice of such 'claim' is received by any 'insured' or by us, whichever comes first." Elsewhere in the policy, in a separate instruction sheet on claims reporting, Maxum says: "All claims should be reported immediately. It is imperative that Maxum receive notice of a claim as soon as possible."

Maxum observes that the Innocent Insured Provision refers only to "giving of notice" and makes no mention of "reporting," and argues this use of language

makes it clear and unambiguous that the policy applies only to the Notice Provision and not the Reporting Provision. But we must consider the policy as a whole, giving each provision effect and interpreting each provision so as to harmonize with the others. *Cincinnati Ins. Co. v. Magnolia Ests., Inc.*, 648 S.E.2d 498, 500 (Ga. Ct. App. 2007). And Maxum's argument takes the phrase "giving of notice" out of context, isolating it from the policy as a whole. *See Grange Mut. Cas. Co. v. Woodard*, 861 F.3d 1224, 1233 (11th Cir. 2017). The Notice Provision provides instructions for how an insured properly gives notice of a claim to Maxum. The Reporting Provision provides a timeframe for reporting. However, there are no separate instructions for how to properly report a claim. Nor is there a separate timeframe for giving notice. So we can read these provisions together in only one reasonable way: The Notice Provision provides instructions for how to properly transfer information about a claim to Maxum—regardless of if the policy calls that action "giving of notice" or "reporting." The Reporting Provision provides the appropriate timeframe for this transfer of information. Thus, the Innocent Insured Provision applies whenever an innocent insured would lose coverage because of another insured's failure to transfer information about a claim to Maxum.

## III. CONCLUSION

The court erred in holding that the Innocent Insured Provision applies only in instances where another insured fails to comply with the notice requirements. Because the district court granted Maxum's first motion for partial summary judgment on this ground, it did not reach the other grounds for denial of coverage. For the same reason, it denied Maxum's second motion for partial summary judgment as moot. Accordingly, we vacate the grant and denial of the first and second motions for partial summary judgment, respectively, and remand with instructions to address the remaining arguments and second motion for partial summary judgment.

**VACATED AND REMANDED.**