[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13151

Non-Argument Calendar

_____

ELITE INTEGRATED MEDICAL, LLC,
JUSTIN C. PAULK,
individually,

                                        Plaintiffs - Appellants,

versus

HISCOX, INC.,
CERTAIN UNDERWRITERS AT LLOYD'S SUBSCRIBING
TO POLICY NUMBER MEO1505941.19,

                                        Defendants - Appellees,

HISCOX DEDICATED CORPORATE MEMBER LIMITED,
as Representative Member of Syndicate 3624 at Lloyd's,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-03948-AT

_____

Before WILSON, ANDERSON, and EDMONDSON, Circuit Judges.

PER CURIAM:

In this declaratory judgment action, Plaintiffs Elite Integrated Medical, LLC ("Elite") and Elite's President, Justin Paulk, appeal the district court's order dismissing Plaintiffs' complaint against Hiscox, Inc. and Certain Underwriters at Lloyd's Subscribing to Policy MEO1505941.19 ("Hiscox"). The district court determined that Hiscox owed no duty to defend Plaintiffs in an underlying civil action brought against Plaintiffs by the Attorney General for the State of Georgia ("the State"). No reversible error has been shown; we affirm.

Elite operated formerly a medical practice that provided regenerative medicine products and services to patients suffering

from pain in the joints of their spines and extremities. In March 2020, the State served Plaintiffs with a "Notice of Contemplated Legal Action," in which the State alleged that Elite had engaged in "unfair and deceptive business practices," in violation of Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-390.

In September 2020, the State filed a civil action against Elite and Paulk. The State asserted against Plaintiffs four claims for violations of Georgia's Fair Business Practices Act, including three claims for engaging in unfair and deceptive acts (in violation of O.C.G.A. § 10-1-393(a)) and one claim for using a computer or computer network to engage in deceptive acts (in violation of O.C.G.A. § 10-1-393.5(b)).

Briefly stated, the State alleged that Plaintiffs, through Elite's advertising materials (including Elite's websites, social media posts, emails, written marketing materials, and live seminars) made false and misleading representations to consumers about Elite's regenerative medicine products and services. According to the State, Plaintiffs represented falsely that the regenerative medicine products offered by Elite (1) treat, cure, or mitigate diseases and health conditions, (2) are comparable to or superior to conventional medical treatments, and (3) are unregulated by and require no approval from the Food and Drug Administration.

At the time the State filed the underlying suit, Elite was the named insured on a professional liability insurance policy administered by Hiscox ("Policy"). Plaintiffs notified Hiscox of the impending suit and requested that Hiscox defend Plaintiffs. Hiscox

responded that the State's claims against Plaintiffs fell outside the scope of the Policy's coverage and, thus, Hiscox owed no duty to defend Plaintiffs.

Plaintiffs then filed this declaratory action in federal district court, seeking a ruling that Hiscox owed a duty to defend Plaintiffs in the underlying suit.  The district court granted Hiscox's motion to dismiss.

We review *de novo* the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6), "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

We are bound by the substantive law of Georgia in deciding this diversity case.  *See Mesa v. Clarendon Nat'l Ins. Co.*, 799 F.3d 1353, 1358 (11th Cir. 2015).  Under Georgia law, "[a]n insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured." *Garland, Samuel & Loeb, P.C. v. Am. Safety Cas. Ins. Co.*, 651 S.E.2d 177, 179 (Ga. Ct. App. 2007).  "[W]here the complaint filed against the insured does not assert any claims upon which there would be insurance coverage, the insurer is justified in refusing to defend the insured's lawsuit." *Id.*

The interpretation of a provision in an insurance contract is a question of law subject to *de novo* review. *Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1219 (11th Cir. 2015); *Am. Empire*

*Surplus Lines Ins. Co. v. Hathaway Dev. Co., Inc.*, 707 S.E.2d 369, 371 (Ga. 2011). The first step in construing a contract is to determine whether the contract language is "clear and unambiguous." *Atlanta Dev. Auth. v. Clark Atlanta Univ., Inc.*, 784 S.E.2d 353, 357 (Ga. 2016). If it is, the court enforces the contract "according to its clear terms." *Id.* If the contract language is ambiguous, however, the court may resolve the ambiguity by applying the rules of contract construction. *Id.*

We begin by examining the language of the Policy. Under the Policy, Hiscox agreed to pay for damages and claim expenses for claims made against the insured "alleging a negligent act, error, or omission in your professional services performed on or after the retroactive date. . . ." The Policy defines "professional services" as "only those services identified as Covered Professional Services under" the Declarations section. "Covered Professional Services" are defined as conduct "[s]olely in the performance of services as a physical medicine clinic including chiropractic, hormone therapy, neuropathy, medical and non-medical weight loss, allergy testing, durable medical equipment and/or instruction, PRP, and amniotic human tissue injections and naltrexone implants."

The Policy also identifies several exclusions: for categories of claims that are not covered. Pertinent to this appeal, the Policy's "Antitrust/Deceptive Trade Practices" exclusion provides that Hiscox owes "no obligation to pay any sums under this Coverage Part, including any damages or claim expenses, for any claim . . . based upon or arising out of any actual or alleged: (a) false,

deceptive, or unfair trade practices; . . . or (d) deceptive or mislead-ing advertising." The Policy's "Intentional Acts" exclusion bars coverage for claims "based upon or arising out of any actual or al-leged fraud, dishonesty, criminal conduct, or any knowingly wrongful, malicious, or intentional act or omissions, except that . . . [Hiscox] will pay claim expenses until there is a final adjudication establishing such conduct . . . ."

The unambiguous language in the Policy makes clear that the State's claims fall outside the scope of the Policy's coverage. First, none of the State's claims involve "Covered Professional Ser-vices," as defined by the Policy. The State's claims against Plaintiffs are for engaging in unfair and deceptive business practices and for using a computer to do so, in violation of Georgia's Fair Business Practices Act. None of the State's claims involve an alleged "negli-gent act, error, or omission" in Plaintiffs' performance of profes-sional medical services. The State's claims focus, instead, solely on Elite's conduct related to marketing and advertising: conduct that required no medical training. *See Garland, Samuel & Loeb, P.C.*, 651 S.E.2d at 179-80 (stating that, to qualify as "professional ser-vices" under a professional liability policy, an insured's act or ser-vice must "necessarily entail[] an application of special learning unique to the insured's profession").

Plaintiffs contend that Hiscox owes them a duty to defend because the "true facts" show that any potential violation of the Fair Business Practices Act was unintentional. That Plaintiffs deny the State's allegations of wrongdoing, however, does not alter the

21-13151                Opinion of the Court                7

nature of the State's claims against Plaintiffs or bring those claims within the Policy's coverage. *See Bituminous Cas. Corp. v. N. Ins. Co. of N.Y.*, 548 S.E.2d 495, 496-97 (Ga. Ct. App. 2001) (stressing that, in determining whether an insurer owes a duty to defend, "the issue is not whether the insured is *actually liable* to the plaintiffs in the underlying action; the issue is whether a claim has been asserted which falls within the policy coverage" (emphasis in original)).

We also reject Plaintiffs' argument that Elite's live seminars constituted "instruction" within the meaning of "Covered Professional Services." Contrary to Plaintiffs' suggestion, "instruction" by itself is no "Covered Professional Service." Instead, the definition of "Covered Professional Services" includes the word "instruction" only within the phrase "durable medical equipment and/or instruction." Read in context, the term "instruction" is limited to instruction about durable medical equipment: not instruction about regenerative medicine.

Moreover -- even *if* the State's claims could be construed as involving Covered Professional Services (which they do not) -- the State's claims against Plaintiffs would fall clearly within the Policy's "Antitrust/Deceptive Trade Practices" exclusion. The language of the "Antitrust/Deceptive Practices" exclusion provides unambiguously that no coverage exists for claims involving "false, deceptive, or unfair trade practices" or "deceptive and misleading advertising": the precise category of claims asserted against Plaintiffs in the underlying civil action.

On appeal, Plaintiffs do not dispute that the Policy's "Antitrust/Deceptive Trade Practices" exclusion encompasses the State's asserted claims. Plaintiffs argue, instead, this exclusion is rendered ambiguous in the light of the Policy's exclusion for "Intentional Acts." Given this purported ambiguity, Plaintiffs say that the Policy should be construed in Plaintiffs' favor and that Plaintiffs should be entitled to recover partial claim expenses as provided under the "Intentional Acts" exclusion. We disagree.

An ambiguity exists "when a provision in a policy is susceptible to more than one meaning." *Blue Cross & Blue Shield of Ga., Inc. v. Shirley*, 699 S.E.2d 616, 619 (Ga. Ct. App. 2010). In construing a contract, we consider the policy as a whole, giving each provision effect and interpreting each provision so as to harmonize with the others. *See Cincinnati Ins. Co. v. Magnolia Ests., Inc.*, 648 S.E.2d 498, 500 (Ga. Ct. App. 2007). Generally speaking, courts must "avoid any construction that renders portions of the contract language meaningless." *Id.*

No inherent conflict exists between the Policy's exclusion for "Antitrust/Deceptive Trade Practices" and the Policy's exclusion for "Intentional Acts." That the unfair-and-deceptive-trade-practices claims asserted against Plaintiffs might also involve intentional conduct (and thus might also fall within the Policy's "Intentional Acts" exclusion) does not render the unequivocal language in the "Antitrust/Deceptive Trade Practices" exclusion susceptible to more than one reasonable interpretation. Enforcing the "Antitrust/Deceptive Trade Practices" exclusion "according to its clear

21-13151                Opinion of the Court                9

terms," no coverage exists for claims alleging unfair and deceptive trade practices.

The plain and unambiguous Policy language makes clear that the claims asserted against Plaintiffs in the underlying civil action fall outside the scope of Policy's coverage. Hiscox, thus, owed no duty to defend Plaintiffs in the underlying suit. The district court concluded properly that Plaintiff's declaratory action was subject to dismissal.

AFFIRMED.